UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 3:18CR24 (VAB) |
| | : | |
| v. | : | |
| | : | |
| CHRISTOPHER HAMLETT | : | September 27, 2018 |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S OBJECTIONS TO EXHIBITS**

The United States of America respectfully submits the following responses to defendant

Christopher Hamlett's objections to the Government's proposed trial exhibits.

Exhibit 1/1A[1] (Backpage Ad Depicting Jane Doe dated 10/6/2017)

Defense Objections:  401, 402, 403, 404(b)

Government Response:  This proposed exhibit is a Backpage ad for Jane Doe's sexual

services submitted by the defendant's email address, chrishamlet53@yahoo.com, on October 6,

2017, when Jane Doe was 17 years old.  The proposed exhibit contains two pages.  The first page

displays a picture of Jane Doe, including her face, and does not appear to be the subject of the

Defendant's objection.  The second page, the Deleted Images section, contains three sexually

graphic photographs of the bodies of three females whose faces are either not visible or are

partially visible.   At trial, the Government anticipates that Jane Doe will testify that two of three

photographs on the second page depict her and that the defendant took those pictures of her.

The third photograph on the second page of the exhibit depicts an unidentified female wearing a

black tank top and exposing her breast and vagina.  This photograph is relevant because the

---

[1] For Exhibits 1/1A, 2/2A, and 3/3A, the numerical exhibit (1, 2, 3) is the redacted copy that contains black redaction boxes over the portions of photographs that the Government alleges are child pornography.  The exhibit with the letter A (1A, 2A, 3A) is the unredacted copy that will be available for the jury to view in hard copy through the process described during the pretrial conference on September 26, 2018.

Government anticipates that witnesses will testify at trial that Hamlett used photographs of other women and girls in his Backpage advertisements for Jane Doe, in order to entice prostitution customers to respond to the ad.  The Government intends to call as a witness adult C.L., who sent the black tank top photograph to Hamlett when he requested photographs to use in the Backpage advertisements he was posting for C.L.  As explained in the Government's response to the defendant's motion *in limine* to preclude prior misconduct of the defendant, *see* Docket #235, C.L.'s testimony (and the photograph that appears in Government Exhibit 1/1A), are not inadmissible under Rule 404(b) because they arise from the same series of transactions as Hamlett's trafficking of Jane Doe and Mary Smith; are inextricably intertwined with that trafficking; and are necessary to complete the story of Jane Doe's and Mary Smith's sex trafficking at trial.  C.L.'s testimony and the exhibit are also admissible for other permissible purposes under Rule 404(b)(2).  *See United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000) (quoting *United States v. Gonzalez*, 110 F.3d 936, 942 (2d Cir. 1997)).

The three photographs of Jane Doe (on pages one and two of the proposed exhibit)  are highly relevant to the elements of the sex trafficking charge because Hamlett submitted all of these photographs while advertising to solicit prostitution customers for Jane Doe when she was a minor.  The photo of Jane Doe on the second page of the exhibit is also an image of child pornography taken by Hamlett, and is specifically described in the Count Eight of the Second Superseding Indictment as one of the images of child pornography produced by Hamlett.

Accordingly, the probative value of this exhibit is extremely high because it demonstrates that Hamlett was advertising Jane Doe's sexual services and had submitted photographs of Jane Doe, including what the Government contends are child pornography images, to Backpage.  All evidence that Hamlett committed the crimes with which he is charged will, of course, be

prejudicial to him.  But there is no unfair prejudice that would result from admission of this exhibit.

Exhibit 2/2A (Backpage Ad Depicting Jane Doe dated 11/13/2017)

Defense Objections:  401, 402, 403, 404(b)

Government Response:  This proposed exhibit is a Backpage ad for Jane Doe's sexual services submitted by the defendant's email address, chrishamlet53@yahoo.com, on November 13, 2017, when Jane Doe was 17 years old.  It contains two photos of Jane Doe on the first page and two photos of Jane Doe on the second page, in the Deleted Images section.  Because Hamlett posted this advertisement to recruit prostitution customers for Jane Doe, it is relevant to the elements of the sex trafficking charge.  One of the photos of Jane Doe on the second page of the exhibit is also an image of child pornography taken by Hamlett that is specifically described in Count Eight of the Second Superseding Indictment as one of the alleged images of child pornography, so it is likewise highly relevant to the production of child pornography charge.

The probative value of these photographs of Jane Doe is extremely high because it demonstrates that Hamlett was advertising Jane Doe's sexual services and that he submitted child pornography images of Jane Doe to Backpage.

In addition to the four photographs of Jane Doe, this exhibit contains one photograph on the second page of the exhibit (Deleted Images section) that depicts an unidentified individual. This photograph is relevant because the Government anticipates witnesses will testify at trial that Hamlett used photographs of other women and girls in his Backpage advertisements for Jane Doe, in order to entice prostitution customers to respond to the ad.  If the Court finds, however, that this photograph is inadmissible under Rule 403 or Rule 404(b), the Government is amenable to redacting that particular photograph.

3

Finally, the photographs are not cumulative because this advertisement for Jane Doe's sexual services was posted on different dates than the advertisement in Exhibit 1/1A, so this exhibit shows that Hamlett violated the sex trafficking statute by advertising and providing Jane Doe for sex on different dates than those listed on Exhibit 1/1A.

Exhibit 3/3A (Backpage Ad for "Island Girl" Depicting Jane Doe and Mary Smith dated 11/13/2017)

Defense Objections:  401, 402, 403, 404(b), 611(a)(2)

Government Response:  This proposed exhibit is a Backpage ad for sexual services submitted by the defendant's email address, chrishamlet53@yahoo.com, on November 13, 2017, when Jane Doe was 17 years old and Mary Smith was 16 years old.  It contains a total of twelve photographs (one on the first page and eleven on the third page in the Deleted Images section). Five of the photographs on the third page (Deleted Image section) depict images of Jane Doe, and four depict Mary Smith.  Because Hamlett submitted these photographs of Jane Doe and Mary Smith to Backpage.com as part of an advertisement for their sexual services, it is relevant to the elements of both of the sex trafficking charges.  Two of the photos of Jane Doe on the third page of the exhibit are also alleged to be images of child pornography taken by Hamlett, that  are specifically described in Count Eight of the Second Superseding Indictment.  Likewise, one of the images on the third page of the exhibit is alleged to be a child pornography image of Mary Smith that was taken by Hamlett, which is specifically described in Count Nine of the Second Superseding Indictment.  Thus, these photos are relevant to multiple charges.

In addition to the five images of Jane Doe, and four images of Mary Smith this exhibit also contains images in the Deleted Images section depicting two unidentified individuals:  the same photograph of the woman in the black tank top described in the discussion of Exhibit 1/1A

above, and a different photograph depicting a woman wearing a pink shirt and displaying her bare buttocks.  As explained above, the Government intends to call witness C.L. to identify the photograph of the woman wearing the black tank top, which is relevant because Hamlett used photographs of other women and girls in his Backpage advertisements for Jane Doe and Mary Smith, in order to entice prostitution customers to respond to the ad.  To the extent that the defendant is arguing that the photographs of the unidentified women in the ad fall under Rule 404(b), it is clear that the ad arose from the same series of transactions as Hamlett's sex trafficking of Jane Doe and Mary Smith; is inextricably intertwined with the trafficking of those teenagers;, and is necessary to complete the story of their sex trafficking at trial.  If the Court finds that the second photograph of the unidentified individual wearing the pink shirt is irrelevant, the Government is amenable to redacting that particular photograph.

The probative value of this exhibit is extremely high because it demonstrates that Hamlett was advertising Jane Doe's and Mary Smith's sexual services and had submitted child pornography images of Jane Doe and Mary Smith to Backpage.

Furthermore, the photographs are not cumulative because this advertisement for sexual services was posted on different dates than the advertisement in Exhibit 1/1A or 2/2A, so this exhibit shows that Hamlett violated the sex trafficking statute by advertising and providing Jane Doe for sex on different dates than those listed on Exhibit 1/1A or 2/2A.  It is not cumulative of any of the Backpage exhibits concerning Mary Smith.

Exhibit 4/4A (Backpage Ad Depicting Jane Doe dated 1/19/2018)

Defense Objections:  401, 402, 403, 404(b)

This exhibit is a Backpage ad posted for Jane Doe's sexual services submitted by the defendant on January 19, 2018.  Jane Doe will identify herself in all four photographs that appear

in the posted section of the ad.  Although this advertisement is dated after Jane Doe's eighteenth birthday, it is relevant to complete the story of Jane Doe's trafficking.  Jane Doe turned eighteen on January 1, 2018, and was residing in a group home run by the Department of Children and Families until January 11, 2018.  On January 11, 2018, the defendant engaged in Facebook Messenger chats with Jane Doe in which he arranged to have someone pick Jane Doe up from the group home.  Jane Doe worked in prostitution for Hamlett off and on until he was arrested on February 8, 2018.  On the day of his arrest, Jane Doe was at the residence where Hamlett was arrested and Hamlett told her to hide in a closet when the agents arrived.  Hamlett had Jane Doe's cellular phone in his pocket when he was arrested.  Jane Doe's experiences with Hamlett unfortunately did not end on the date she turned 18, and her entire time with him is relevant to the trial.  If the Court were to impose an artificial end date on her work in prostitution for Hamlett as of her eighteenth birthday, it would negate the truth-seeking function of a trial.  *See* Fed. R. Evid. 611(a)(1).

The Government is amenable to fully redacting the three images that appear in the Deleted Images section of this exhibit.  Finally, the prejudicial impact of this exhibit does not outweigh its probative value.

Exhibit 5/5A  (Backpage Advertisement Depicting T.S. dated 9/4/2017)

Defense Objections:  401, 402, 403, 404(b)

Government Response:  This is a Backpage ad posted by the defendant's email address, chrishamlet53@yahoo.com, depicting T.S., a then-20-year-old woman who worked for Hamlett in prostitution while Jane Doe was sex trafficked by Hamlett.  T.S. will identify herself in two of the photographs on the first page of the exhibit.  The exhibit is relevant because it corroborates that T.S. was working in prostitution for Hamlett on the date of the advertisement, which was

around a time when Jane Doe was also working for Hamlett.  This exhibit is also relevant because the phone number listed for customers to respond to the advertisement is the same number Hamlett used to post Jane Doe on Backpage and used on text messages in which Hamlett was communicating directly with Jane Doe.

The Government is amenable to fully redacting the photographs on the second page of the exhibit in the Deleted Images section, which depict unidentified individuals.  Finally, the Government does not believe that the prejudicial impact of this exhibit outweighs its probative value.

Exhibit 6/6A  (Backpage Advertisement Depicting T.S. dated 10/24/2017)

Defense Objections:  401, 402, 403, 404(b)

Government Response:  This is a Backpage ad posted by the defendant's email address, chrishamlet53@yahoo.com, depicting T.S., a then-20-year-old woman who worked for Hamlett in prostitution while Jane Doe was sex trafficked by Hamlett.  T.S. will identify herself in the two photographs on the first page of the exhibit.  The exhibit is relevant because it is the advertisements referenced in Count Four of the Second Superseding Indictment.  It also corroborates that T.S. was working in prostitution for Hamlett on the date of the advertisement, which was around a time when Jane Doe was also working for Hamlett.  Because the exhibit is the subject of one of the charged counts in the Second Superseding Indictment, it is not 404(b) evidence.

The Government is amenable to fully redacting the photographs on the second page of the exhibit in the Deleted Images section.   Finally, the Government does not believe that the prejudicial impact of this exhibit outweighs its probative value.

Exhibit 7 (Backpage Advertisement Depicting Mary Smith dated 10/10/2017)

Defense Objections:  401, 402, 403, 404(b)

Government Response:  This is a Backpage ad posted by the defendant's email address, chrishamlet53@yahoo.com, depicting Mary Smith.  There are three photographs in the ad, all of which depict Mary Smith.  The first two photographs were sent to Hamlett by Smith through a Facebook Messenger conversation that the Government seeks to introduce as Exhibit 21.  Because the photographs all depict Mary Smith, they are all relevant to the trial and do not constitute 404(b) evidence.

The Government is amenable to fully redacting the photographs on the second page of the exhibit in the Deleted Images section.   The prejudicial impact of this exhibit does not outweigh its high probative value.

Exhibits 14, 15, 22 (Facebook Records Concerning Isabella Rivera)

Defense Objections:  401, 402, 403

These exhibits consist of Facebook records demonstrating that the defendant's Facebook account, "Cadillac Black," searched for and became friends with a Facebook profile in the name of "Isabella Rivera."  As trial testimony will demonstrate, "Isabella Rivera" was an undercover Facebook account being utilized by Hartford Police Detective Josh Lewis to identify and recover underage girls involved in sex trafficking.  Detective Lewis had corresponded with Jane Doe through the "Isabella Rivera" Facebook account, and ended up recovering Jane Doe after such conversations.  It is anticipated that Jane Doe will testify that, after that recovery, she told Hamlett that the "Isabella Rivera" account was actually being used by police, and that Hamlett then searched for the account and became friends with "Isabella Rivera."  Thus, the searches in the Cadillac Black account for the "Isabella Rivera" account, and the exhibit demonstrating that Cadillac Black had become Facebook friends with "Isabella Rivera," are relevant to corroborate

Jane Doe's testimony that she advised Hamlett about the police investigation, and to show
Hamlett's ownership and use of the Cadillac Black account.  There is no unfair prejudice from
these benign Facebook business records, and their probative value is high.

Exhibits 16-21, 23-27, 29, 31 (Facebook Messenger Conversations)

Defense Objections:  802, 401, 402, 403

These exhibits are conversations between the defendant's Facebook account, "Cadillac
Black," and various individuals, including Jane Doe, Mary Smith, and some of Hamlett's
associates.[2]  These conversations are relevant because they involve Hamlett's conversations with
other individuals regarding Jane Doe (whom Hamlett refers to by the nickname "Bella") in the
messages and his direct conversations with Jane Doe and Mary Smith.

To the extent that the messages contain out-of-court statements by Hamlett being offered
for the truth of the matters asserted therein, they are opposing party admissions of Hamlett's and
are not hearsay under Federal Rule of Evidence 801(d)(2)(A).  The Government expects that
Jane Doe, Mary Smith, T.S., and C.L. (among other witnesses) will identify "Cadillac Black" as
Hamlett's Facebook account and will state that in the Facebook Messenger conversations
involving them, they knew they were actually speaking with Hamlett.  The Government also
seeks to admit the Cadillac Black profile page from Facebook (Government Exhibit 12, to which
the defendant has not objected), which has a photograph of Hamlett displayed prominently.
Additionally, Facebook records (Government Exhibit 13) show that the phone number associated
with the Cadillac Black account (860-818-2269) is the same number that is subscribed to by
Hamlett (*see* Government Exhibit 44) and used in several Backpage advertisements for both Jane

---

[2] Facebook Messenger conversations are produced by Facebook in reverse chronological order,
so the conversations selected as Government exhibits should be read from the bottom of the page
to the top of the page  beginning with the last page of an exhibit to the first page of an exhibit.

Doe and T.S. (*see* Government Exhibits 2, 5), and is the same number Jane Doe used to communicate with Hamlett (*see* Government Exhibits 38-39) and with an undercover officer attempting to recover Jane Doe (*see* Government Exhibit 36).  Any objection the defendant has regarding whether it was actually Hamlett using the Cadillac Black Facebook account would go to the weight of the evidence, not its admissibility.  The other specific objections to these exhibits are addressed below.

Exhibit 16:  This is a message dated 8/12/2017 from Cadillac Black to an individual named Logan Hill stating:  "I got 3 hoes.  At the room I'm going up their later in trapping right now."  This statement is admissible as a statement of Hamlett that he has "3 hoes" during the time period that Jane Doe was working for him in prostitution.  Its probative value is high as to Hamlett's trafficking of Jane Doe, as she is likely one of the "hoes" that Hamlett is discussing.  As discussed above, this is not hearsay because it is an opposing party's (Hamlett's) admission.

Exhibit 17:  The Government withdraws this exhibit.

Exhibit 18:  This exhibit contains a message from Cadillac Black to an individual using the Facebook account "Blockboy Bango" dated 1/5/2018 stating:  "Yay yay one is my Spanish bitch Bella and the other one new she short with a fat ass."  Again, the Government will introduce evidence that the Cadillac Black Facebook account belonged to Hamlett, and this message directly concerns Jane Doe.  It is probative of the fact that Hamlett was prostituting his "bitch" Jane Doe.  Even though this message exchange with Blockboy Bango occurred after Jane Doe was 18, it is inextricably intertwined with the story of Jane Doe's trafficking.

Exhibit 19:  This exhibit contains a series of messages between Cadillac Black and an individual using the Facebook account "Eyes Low" dated 2/3/2018 in which Eyes Low asks "What bitch u wit?" and Cadillac Black answers that he is with the "Spanish one," whom he calls

"Bella" and whom he says is "pretty asf [as f*ck]."  Cadillac Black then responds:  "; "O you want her" and "she on the clock god $$$."  The Government will introduce evidence that the Cadillac Black Facebook account belonged to Hamlett, and this message directly concerns Jane Doe.  It is probative of the fact that Hamlett was prostituting his "bitch" Jane Doe and that she was making a significant amount of money—"on the clock"—for Hamlett.

Exhibit 20:  This exhibit contains a series of messages between Cadillac Black and T.S.  On September 3, 2017, T.S. asked Cadillac Black:  "You don't have a play on out call thats willing to pick me up," to which Cadillac Black responds:  "Let me see."  Cadillac Black also references the address of 934 Wethersfield Avenue, which is the location where Jane Doe first met Hamlett.  On September 4, 2017, T.S. asked Hamlett if she "have clients lined up for when I touch down," and Hamlett responded:  "I have clients calling for dates Thats how it goes b[a]by."  In the messages, T.S. refers to Cadillac Black by his nickname, "Caddi."  Additionally, on October 10, 2017, T.S. asked Hamlett if he had "talk[ed] to bella."  These message directly concern T.S.'s prostitution with Hamlett and Jane Doe's during the time when Jane Doe was seventeen years old, and ties Cadillac Black to Hamlett's nickname, "Caddi."  The exhibit also corroborates that T.S. interacted with Jane Doe and Hamlett in September and October 2017.

Exhibit 21:  This exhibit contains a series of messages between Cadillac Black and Mary Smith, whose Facebook account was under the name "Amanni Mariee."  In the messages, which all took place when Mary Smith was sixteen years old, Smith sent Hamlett (who was using the Cadillac Black Facebook account) a number of photographs of herself, including several that Hamlett later uploaded to Backpage ads.  They also discuss Cadillac Black's soliciting prostitution customers for Smith (*see* page 4128 of Facebook record; Cadillac Black:  "Ok but how long you trying to make bread before you go mia; Because I don't want to invest in you to

make bread and then you only be around for 3 hours feel me."); his prostitution of other women and girls while Mary Smith worked for him (*see* page 4127 of Facebook record; Smith: "Ok I gottchuu am I the only one?; Cadillac Black: "Don't worry long as you get bread we Gucci … Naw I'll be close by and a few other girls will have rooms around you!"); his use of phone number 860-818-2269 (*see* pages 4125-4126 of Facebook record); discussion of when clients arrive and leave (*see* pages 4122-4125 of Facebook record; Cadillac Black: "I'm gone send the other client in he has 100 for q.v. [quick visit] ok"); and Hamlett's instructions to Smith to delete her Facebook after he learned that Jane Doe had been interviewed by police (*see* pages 4114-4115 of Facebook record; Cadillac Black: "The ds [detectives] might contact you say nothing to get intouch with me hit up [Smith's ex-boyfriend] ok … delete ya facebook make a new one."

This exhibit is unquestionably relevant to Count Two of the Second Superseding Indictment alleging that Hamlett sex trafficked Mary Smith, and is not unfairly prejudicial.

Exhibit 23: This exhibit contains a series of messages between Cadillac Black and C.L., an adult woman who worked in prostitution for Hamlett and who sent him the photograph of the woman in the black tank top that appears in the Deleted Images section of Backpage ads for both Jane Doe and Mary Smith. C.L. is expected to testify that Hamlett used the Cadillac Black Facebook account, through which he requested photographs from C.L. (*see* page 284 of Facebook record: Cadillac Black: "Send me those pics again"). In response, C.L. sent a number of photographs that she will testify she obtained from the Internet; the photographs do not depict her. Additionally, shortly after Hamlett learned that Jane Doe had been interviewed by the police, he told C.L. in the Facebook messages (page 232 of the Facebook record) that she should delete her Facebook account. He asked Mary Smith to do the same thing on the exact same day, demonstrating consciousness of guilt. As explained in the Government's response to the

defendant's motion *in limine* to preclude prior misconduct of the defendant, *see* Docket #235,

C.L.'s testimony—and this exhibit, in which she sends the particular photo at issue to Hamlett—

is relevant and not 404(b) evidence.  The remainder of the exhibit gives context to Hamlett's

requesting the photographs and corroborates C.L.'s anticipated testimony that he promoted her

prostitution.

Exhibit 24:  This exhibit contains a series of messages between Cadillac Black and an

individual named Rashawn Hill on 1/17/2018.  Hill asks Hamlett "What bitches up there" and

Hamlett answers:  "Tash Mac nye and Bella."  Hamlett's statement is a party admission, and

Hill's question should be admitted to provide context to Hamlett's answer.  The messages are

relevant to prove that Hamlett was with Jane Doe and T.S., who goes by the nickname "Tasha

Mac," on the date of the message.

Exhibit 25:  This exhibit contains a series of messages between Cadillac Black and one of

Jane Doe's Facebook accounts between 1/30/18 and 2/7/18.  The exhibit runs from Page 609 to

Page 620 of the Facebook records.  The Government withdraws its offer of Pages 610-614 and

616-620.  The Government only seeks to admit Page 609 and Page 615.  Page 609 contains the

following statement dated 2/7/2018 (the day before Hamlett's arrest) from Cadillac Black to Jane

Doe:  "b[a]by we need to catch one good client so we can get off our feet so I can grab more

work and get us a room tonight and get what we need aint nothing change we just need to get off

our feet b[a]by."  Page 615 contains the following statements by Hamlett dated 1/12/2018 and

1/16/2018, respectively:  (1) "if u still be down we can make something happen I need to know if

u real or not im gone give u another chance I owe you that much I know I forgot to give u a cut

and lost it at the casiono (sic.) well that want (sic.) happen again but if gone do this again we

gone do this a different way ok"; (2) Somebody want to see you he got 250 this is the only one

13

we need 30 to driver and we break down the rest." These are party admissions of Hamlett's and are not hearsay. They are relevant because they discuss Hamlett's recruitment of Jane Doe in prostitution even after she turned 18. Jane Doe's responses to these comments can be admitted for context.

Exhibit 26: This exhibit contains a series of messages exchanged on September 6, 2017, between Cadillac Black and an individual named "Nye Santana," who introduced T.S. to Hamlett. The messages contain relevant statements of Hamlett's regarding T.S.'s prostitution clients, including: "Tell Tasha hurry your client just pulled up, 200 hr," and "A client outside for you he want car date for 80 I just want 30, Tasha data already has room number he bout to come upstairs." These messages corroborate that T.S. was working in prostitution for Hamlett on 9/6/2017, which was during the period that Jane Doe worked for Hamlett.

Exhibit 27: This exhibit is a series of messages between Cadillac Black and an individual with using the Facebook account "Blockboy Bango" dated 1/17/2018. Blockboy Bango asks where Hamlett is, and he responds that he is at the Motel 6 (a motel witnesses will testify Hamlett used frequently for prostitution appointments). Bango also asks "how many" girls were with Hamlett, and Hamlett reponds: "Two on play one here," and that he "got 3…Two Spanish one black." Bango asks Hamlett to send photos of the girls, and Hamlett responds by sending pictures of Jane Doe, T.S., and another identified individual. This exhibit thus contains Hamlett's party admissions and is relevant because Hamlett is identifying Jane Doe and T.S. as two of the women who were with him working in prostitution ("on play") on the date of the messages.

Exhibit 29: This exhibit is a series of messages between Cadillac Black and one of Jane Doe's Facebook accounts between 10/5/2017 and 11/17/2017, when Jane Doe is 17 years old.

Hamlett states:  "I got rid of my phone delete ya fb and get rid of old number."  He later states: "call me 860 906 8976."  These are Hamlett's party admissions and are thus not hearsay.  They are also highly relevant, as Hamlett is asking Jane Doe to delete her Facebook account and get a new phone number, which shows consciousness of guilt.  These messages were sent by Hamlett only a few days after Jane Doe was initially recovered by the police, and it is clear that he was trying to convince her to destroy potential evidence and make it more easily for the police to find both of them.  In addition, the phone number listed by Cadillac Black is the same number listed in advertisements soliciting prostitution customers for Jane Doe in January 2018.

Exhibit 31:  This exhibit is a series of messages between Cadillac Black and an individual named Jusresh Lyles dated 9/15/17 during which Hamlett explains his business model and attempts to recruit Lyles.  Hamlett says:  "I direct clients to females for undercover meetings … all I want is 30 percent from each client … and its only gone be 160hh [half hour] or 200 hr [hour] … I ben doing this for a very long time I have many regulars and its on going … I have females on pay roll in not saying in different just the numbers I use is known for a safe clean way to buy pussy and clients know that."  Although this exhibit deals with Hamlett's recruitment of another individual, it contains his own admissions about how his business operated during the time period that Jane Doe worked for him as a minor.  Pursuant to Rule 404(b), such evidence is admissible to show motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.  To the extent that Hamlett challenges any of these areas at trial, Exhibit 29 should be admissible (at the very least) to rebut his allegations that, for instance, he did not intend to facilitate the prostitution of Jane Doe.  This exhibit is also relevant to show that Hamlet was the user of the Cadillac Black account, as Jane Doe is expected to testify that the

details Cadillac Black provides of his operation in Exhibit 29 match the way he operated his prostitution business.

Exhibit 36 (Text Messages between FBI SA James Wines and (860) 818-2269)

Defense Objections:  802

Government's Response:  This series of text messages took place between FBI Special Agent James Wines, who was acting in an undercover capacity, and the phone number that was both subscribed to by Hamlett and that was under the contact "Cadi" in Jane Doe's cellular phone.  The messages took place on November 8, 2017, when Special Agent Wines and other law enforcement officers were actively engaged in attempting to locate and recover Jane Doe.  Special Agent Wines identified a Backpage ad with photographs of Jane Doe that had the phone number (860) 818-2269 listed as the contact number.  Acting in an undercover capacity, he contacted (860) 818-2269 to try to set up an appointment with Jane Doe so that other undercover law enforcement officers could go to the appointment and recover her.  Ultimately, another girl who was not Jane Doe appeared in response to the text messages, but that was neither intended or planned by law enforcement.  These text messages were sent to investigate Jane Doe's trafficking and in an effort to recover her, making them relevant to trial.

The Government will offer the following evidence that Hamlett was using (860) 818-2269 at the time of these messages:  (a) that phone number was subscribed to Hamlett; (b) (860) 818-2269 was the phone number listed in Jane Doe's contact list on her phone as belonging to "Cadi," and which she used to communicate with Hamlett; (c) Hamlett had told Mary Smith just a few days earlier on October 29, 2017, that his phone number was (860) 818-2269 (*see* Government Exhibit 21, page 4125 of the Facebook record); (d) the person who appeared in response to Special Agent Wines's texts was Mary Smith; and (e) it was Hamlett's practice to

communicate with potential clients by text to arrange the customers.  This evidence demonstrates that the statements made by the user of (860) 818-2269 were made by Hamlett; the defendant is of course free to argue that someone else other than Hamlett was using (860) 818-2269 at the time of these messages, but that goes to the weight of the evidence, not its admissibility.   Special Agent Wines' statements, which are largely questions and statements that are not being admitted for the truth of the matters asserted, are not hearsay, and are admissible as context for Hamlett's statements.

Exhibit 37 (Text Messages Between Hartford PD Detective Josh Lewis and (860) 337-6736)

Defense Objections:  802

Government Response:  This is a series of text messages sent between Hartford Police Department Detective Josh Lewis, acting in an undercover capacity, and a number believed to be have been used by Hamlett, while law enforcement was actively engaged in attempting to recover Jane Doe in January 2018.

Jane Doe is expected to testify that Hamlett was the person sending Detective Lewis messages from (860) 337-6736, because Hamlett arranged the appointment and told her to go outside to meet the potential client.  Thus, the statements made by (860) 337-6736 are Hamlett's party admissions and are not hearsay.  Detective Lewis's responses, which are largely questions and statements that are not being admitted for the truth of the matters asserted, are not hearsay, and are admissible to provide context for Hamlett's statements.

Exhibits 37 and 38 (Text Messages Between Jane Doe and (860) 818-2269)

Defense Objections:  802

Government Response:  These exhibits are screen shots of Jane Doe's cellular phone showing a series of conversations between Jane Doe and the contact in her phone labeled "Cadi

17

Chris," under phone number (860) 818-2269, which was subscribed to by Hamlett.   Jane Doe is expected to testify that these were conversations between Hamlett and herself.  Thus, the statements made by (860) 818-2269 are Hamlett's party admissions and are not hearsay.  Jane Doe's statements in the messages—to the extent that they are being offered for the truth of the matters asserted therein—should be admitted to give context to Hamlett's statements.

Exhibit 51 (Contact for "Caddy" from Z385/ZTE Maven Phone)

Defense Objections:  802

Government Response:  This exhibit is a one-page excerpt of the Contacts section of the forensic cellular phone report for the Z385/ZTE Maven phone found in Hamlett's pocket at the time of his arrest.  The phone actually belonged to Jane Doe.  The relevant portion of the exhibit consists of the "contact" for "Caddy," which lists the phone number as (860) 906-8976, the "Last time contacted" as 2/4/2018 04:17 UTC, and the "Times contacted" as "60."  None of these items are statements for purposes of the hearsay rules; they are simply items extracted by the forensic software that was used to examine the cellular phone.  Since they are not out-of-court statements offered for the truth of the matters asserted therein, the hearsay rules are inapplicable.

Exhibit 52 (Excerpt of Cellular Phone Forensic Report from Z385/ZTE Maven Phone)

Defense Objections:  802

Government Response:  This exhibit is two pages of the Messages section of the forensic cellular phone report for the Z385/ZTE Maven phone found in Hamlett's pocket at the time of his arrest.  The phone actually belonged to Jane Doe.  Line item 342 is an incoming message from the contact named "Caddy" using phone number (860) 906-8976 dated 1/19/2018 stating: "Times up and the ride is here too."  Line items 394 and 395 are also incoming messages from

the the contact named "Caddy" using phone number (860) 906-8976 dated 1/15/2018 stating:

"Why you not answering" and "Always answer bella."

These statements are not hearsay because they are the defendant's admissions.  *See* Fed.

R. Evid. 801(d)(2).  The messages were sent by a phone number saved under the contact name

"Caddy," and Hamlett had told Jane Doe on 11/17/2017 to call him at phone number (860) 906-

8976 (*see* Government Exhibit 29).  Any objection the defendant has regarding whether it was

actually Hamlett using the phone number (860) 906-8976 would go to the weight of the

evidence, not its admissibility.

Exhibit 57 (MMS Messages Section of ZTE Cymbal Phone Forensic Report)

Defense Objections:  401, 402, 403

Government Response:  This two-page exhibit consists of 13 MMS (multimedia)

messages sent from Jane Doe's cellular phone on 1/6/2018.  Each message contains a thumbnail

photograph of Jane Doe wearing a pink outfit.  The Government expects Jane Doe to testify that

each time this photograph was sent on 1/6/2018, it was sent to a potential prostitution client.  The

messages appear nowhere else in the Government exhibits, so the defendant's objection that the

exhibit is cumulative is meritless.  The exhibit is relevant to complete the story of Jane Doe's

trafficking, as it demonstrates that she was still being promoted in prostitution just six days after

she turned eighteen years old.

Exhibit 61 (Connecticut Department of Labor Certification of Lack of Records)

Defense Objections:  401, 402, 403

Government Response:  This exhibit is a certificate from the Connecticut Department of

Labor stating that Hamlett's Social Security Number was not found in the Department's

Unemployment Insurance Quarterly Wage Records, which means that Hamlett earned no wages

by an employer covered by the Unemployment Insurance Act within the most-recently reported sixteen quarters.

This exhibit is relevant to show that Hamlett had no legitimate source of income during the time period that he was promoting Jane Doe, Mary Smith, T.S., C.L., and other women in prostitution.  It is relevant to his motive (money) to traffic Doe and Smith.  In Government Exhibit 25, Hamlett told Doe through Facebook on 2/7/2018 (a day before his arrest):  "bby we need to catch one good client so we can get off our feet so I can grab more work and get us a room tonight and get what we need aint nothing change we just need to get off our feet bby."  This message indicates that Hamlett needed money so that he and Doe could "get off our feet."  The Department of Labor certification showing that Hamlett had no legitimate source of income helps to explain why Hamlett was dependent upon Doe and others working in prostitution to earn money.

Exhibit 62 (Backpage Printout of Jane Doe Ad Dated 11/7/2017)

Defense Objection:  403

Government Response:  This exhibit consists of the screenshot of the Backpage ad that Detective Lewis and FBI Special Agent Jim Wines contacted on 11/8/2017 when they were engaged in an effort to recover Jane Doe.  It is relevant to show why they contacted (860) 818-2269, the number used in the ad.  Ultimately, of course, Hamlett sent Mary Smith to meet Detective Lewis, instead of Jane Doe.

The exhibit is not cumulative because there are no other Backpage ads being offered that depict Jane Doe dated 11/7/2017.  Although the Administrative Data section of Government Exhibit 2 indicates that that particular ad was posted on 11/7/2017, Backpage only saves and produces the last iteration of any particular ad.  In the case of Government Exhibit 2, that means

20

that Backpage produced the ad as it existed on 11/13/2017.  Thus, Exhibit 62, which served as

the basis for the 11/8/2017 recovery effort for Jane Doe, is not cumulative of Government

Exhibit 2 or any of the other Backpage ads.


Respectfully submitted,

JOHN H. DURHAM
UNITED STATES ATTORNEY

*/s/ Nancy V. Gifford*

NANCY V. GIFFORD
ASSISTANT UNITED STATES ATTORNEY
Federal Bar No. ct16324
450 Main Street
Hartford, CT 06103
(860) 947-1101

SARALA V. NAGALA
ASSISTANT UNITED STATES ATTORNEY
Federal Bar No. phv05529
157 Church Street, 25th Floor
New Haven, CT 06510
(203) 821-3700


## CERTIFICATE OF SERVICE

I hereby certify that on September 27, 2018, a copy of the foregoing was filed
electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the
Court's electronic filing system.


/s/
Nancy V. Gifford
ASSISTANT U.S. ATTORNEY