# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA

v.

No. 3:18-cr-24 (VAB)

CHRISTOPHER HAMLETT.

**RULING AND ORDER ON MOTIONS TO SUPPRESS EVIDENCE**

The second superseding indictment in this case charges Christopher Hamlett ("Defendant") with two counts of sex trafficking of a minor, in violation of 18 U.S.C. §§ 1591(a)(1), (b)(2), and (c), five counts of using a facility in interstate and foreign commerce with intent to facilitate prostitution, in violation of 18 U.S.C. §§ 1952(a)(3)(A) and (b)(1)(i), and two counts of production of child pornography, in violation of 18 U.S.C. § 2251(a).

Mr. Hamlett has filed two motions to suppress evidence addressing three distinct issues: (1) that evidence must be suppressed that was obtained, while law enforcement officers unlawfully and without a warrant seized his cellphone, manipulated the phone, and revealed evidentiary information that the officers later relied on in seeking a warrant for its contents; (2) that the pretrial and trial identifications of Mr. Hamlett "must be suppressed because the pretrial identification procedures employed were unduly suggestive and the proposed trial identifications cannot be attributed to a reliable source independent of the unduly suggestive pretrial identification procedures," and (3) that all evidence obtained under a warrant to search two Facebook accounts allegedly associated with Hamlett should be suppressed. ECF Nos. 35, 46.

For the following reasons, Mr. Hamlett's motions to suppress evidence are **DENIED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Allegations

Based on the indictment, and the filings and arguments of the parties, the underlying factual circumstances are alleged to be as follows[1]:

In June 2017, the Complainant, then seventeen years old, ran away from her placement with the Connecticut Department of Children and Families (hereinafter "DCF"). On October 23, 2017, the Complainant called a social worker at an organization dedicated to helping sex trafficking victims. She reported to the social worker that she had been homeless for four months, and that a man named "Chris" a.k.a. "Cadi" had been having her perform sexual acts in exchange for money since August of 2017.

The Complainant provided the social worker with screen shots of conversations she had had with "Cadi" using her cellular telephone, which appeared to have occurred in October 2017 and included discussions of prices and the scheduling of clients for sexual acts with the Complainant. The social worker notified DCF of the Complainant's disclosures, and DCF then notified Detective Josh Lewis of the Hartford Police Department. Detective Lewis then began to investigate the Complainant's allegations.

Detective Lewis conducted a search of publicly-available information on Facebook and found a Facebook page under the name "Cadillac Black," which was associated with the phone

---

[1] The parties agree that an evidentiary hearing was not necessary on the pending motions, except for the seizure of the cellphone issue. *United States v. Quinones*, 457 Fed. Appx. 68, 70 (2d Cir. 2012) ("An evidentiary hearing on a motion to suppress 'ordinarily is required if the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question'"). Mr. Hamlett did request an evidentiary hearing. But as discussed herein, because Mr. Hamlett could not establish a reasonable expectation of privacy in a cellphone he admittedly did not own, the Court denied the request. Mr. Hamlett's counsel did make a proffer of what testimony would have been presented at an evidentiary hearing. This proffer, however, failed to demonstrate the need for an evidentiary hearing. *United States v. Watson*, 404 F.3d 163, 167 (2d Cir. 2005) (finding that it was unnecessary for a district court to hold an evidentiary hearing when the "defendant failed to show that he could challenge the search under the Fourth Amendment").

number that was displayed in the text message screenshots. The Facebook page under the name "Cadillac Black" stated that he studied at "Pimp Academy." Detective Lewis recognized Mr. Hamlett in the photographs on the Facebook page. Detective Lewis also noted that Cadillac Black and the Complainant were "friends" on Facebook.

On November 8, 2017, Hartford police officers brought the Complainant to the Hartford Police Department where Detective Lewis showed her a printed color photograph from the public Facebook profile of "Cadillac Black," whom Detective Lewis believed to be Mr. Hamlett, as well as Mr. Hamlett's booking photograph. The Complainant identified the person depicted in the photographs as "Cadi."

On February 8, 2018, Hartford police officers and Federal Bureau of Investigations ("FBI") agents arrested Mr. Hamlett at a residence in Hartford, Connecticut, based upon a criminal complaint signed by the Honorable Donna F. Martinez on February 7, 2018. A person opened the door to the residence in response to police announcing their presence, and police immediately identified Mr. Hamlett standing inside the residence and arrested him without incident. The officers did not have a warrant to search Mr. Hamlett or the residence, but performed a search incident to his arrest. The police report prepared on February 26, 2018, in connection with the arrest stated:

> A search of Christopher 'Cadi' hamlet incident to arrest located a cellular telephone in his front right pants pocket. Christopher 'Cadi' Hamlett stated the phone was not his, stating it belonged to his aunt. As the phone was in his possession and based on the undersigned's training and experience, knew that 'pimps' utilize numerous cellular telephones, many not in their name in order to avoid detection from law enforcement, this cellular telephone was seized as evidence.

Hartford Police Report, Mot. to Suppress Ex. 1, ECF No. 30-1.

The officers brought Mr. Hamlett to the United States Marshal's Office, and, Special Agent Sharp touched the screen of the phone to determine whether it had a passcode. At that point:

> [Special Agent] Sharp noticed the front of the cellular telephone which had been seized from Christopher 'Cadi' Hamlett was displaying a photo of Jane Doe and her father. The undersigned called the phone number which was now known to be the last number for Jane Doe. The phone which was now in possession of SA Sharp began to vibrate. It was now evidence that Christopher 'Cadi' Hamlett was in possession of Jane Doe's cellular phone.

*Id.* Special Agent Sharp submitted a report to the FBI on February 16, 2018, which did not mention noticing the display screen of the phone or the subsequent phone call.

Approximately one month later, Special Agent Sharp submitted an affidavit for a warrant to search the phone recovered during Mr. Hamlett's arrest, and stated that:

> While HAMLETT was being processed, your affiant checked TARGET PHONE 2 to determine if there was a passcode locking device. Your affiant immediately recognized the locked screen photograph as an image of the MV and her father. Your affiant was concerned that HAMLETT may have possession of the MV's phone . . . . To determine if TARGET PHONE 2 was the MV's phone, your affiant asked Detective Lewis to call the MV's phone number. When Det. Lewis dialed the number for MV, TARGET PHONE 2 rang.

Search Warrant Affidavit Ex. 3, ECF No. 20-1.

### B. Procedural History

On February 14, 2018, a federal grand jury returned an indictment, charging Mr. Hamlett with one count of sex trafficking of a minor. Under this indictment, from in or about August 2017 through in or about November 2017, in and affecting interstate commerce, Mr. Hamlett allegedly did knowingly recruit, entice, harbor, transport, provide, obtain, advertise, and maintain by any means a minor victim, knowing and, except where the act constituting the violation is advertising, in reckless disregard of the fact that the minor victim had not attained the age of eighteen years and would be caused to engage in a commercial sex act.

On April 26, 2018, Mr. Hamlett was charged in a seven-count superseding indictment with two counts of sex trafficking of a minor and five counts of facilitating prostitution under the Travel Act. *See* ECF No. 56.

On June 28, 2018, Mr. Hamlett was charged in a nine-count second superseding indictment with two counts of sex trafficking of a minor, five counts of facilitating prostitution under the Travel Act, and two counts of production of child pornography. ECF No. 133.

## II.     STANDARD OF REVIEW

The following standards are relevant to the review of these pending motions.

First, the Fourth Amendment of the U.S. Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "The touchstone of the Fourth Amendment is reasonableness, and the reasonableness of a search is determined 'by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.'" *United States v. Knights*, 534 U.S. 112, 118–19 (2001) (quoting *Wyoming v. Houghton*, 526 U.S. 295, 300 (1999)).

The exclusionary rule is a "principal mode of discouraging lawless police conduct." *Terry v. Ohio*, 392 U.S. 1, 12 (1968). The exclusionary rule, however, is a "last resort, not [a] first impulse." *Herring v. United States*, 555 U.S. 135, 140 (2009) (quoting *Hudson v. Mich.*, 547 U.S. 586, 591 (2006)); *see also id.* ("The fact that a Fourth Amendment violation occurred—*i.e.*, that a search or arrest was unreasonable—does not necessarily mean that the exclusionary rule applies"). A court will suppress evidence when the "remedial objectives" of the exclusionary rule "are thought most efficaciously served—that is, where its deterrence benefits outweigh its substantial social costs . . ." *Hudson*, 547 U.S. at 591.

Second, under Federal Rule of Evidence 801(d)(1)(C), a pre-trial identification "is generally admissible." *United States. v. Bautista*, 23 F.3d 726, 729–30 (2d Cir. 1994); *see also United States v. Owens*, 484 U.S. 554, 562 (1988) ("The premise for Rule 801(d)(1)(C) was that, given adequate safeguards against suggestiveness, out-of-court identifications were generally preferable to courtroom identifications"). A court will "exclude a pre-trial identification only if the procedure that produced the identification is 'so unnecessarily suggestive and conducive to irreparable mistaken identification that [the defendant] was denied due process of law.'" *Bautista*, 23 F.3d at 729–30 (quoting *Stovall v. Denno*, 388 U.S. 293, 302 (1967)). In other words, a court will exclude a pre-trial identification that was the result of an unnecessarily suggestive procedure and was unreliable. *Id.*

As for in-trial identifications, "[d]ue process requires that criminal trials proceed consistently with that fundamental fairness which is essential to the very concept of justice." *Raheem v. Kelly*, 257 F.3d 122, 133 (2d Cir. 2001) (quoting *Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir.), *cert. denied*, 525 U.S. 840 (1998)) (internal quotation marks omitted). "When the prosecution offers testimony from an eyewitness to identify the defendant as a perpetrator of the offense, fundamental fairness requires that the identification testimony be reliable." *Id.*

## III. DISCUSSION

### A. The Seizure of the CellPhone

Mr. Hamlett argues that the seizure of the cellphone, without a warrant or probable cause, was unlawful. Memo. in Support of Mot. to Suppress Cellphone Evidence at 6, ECF No. 30.

In order to contest a Fourth Amendment violation, a party "must have a cognizable Fourth Amendment interest in the place searched before seeking relief for an unconstitutional search." *Byrd v. United States*, 138 S.Ct. 1518, 1530 (2018). A party, however, cannot

6

vicariously assert Fourth Amendment rights on behalf of another. *Plumhoff v. Rickard*, 134 S.Ct. 2012, 2022 (2014). A "defendant seeking suppression of evidence found without a search warrant must show that he had a reasonable expectation of privacy in the place or object searched." *United States v. Delva*, 858 F.3d 135, 148 (2d Cir. 2017). One need not be the owner of the property for his privacy interest to be one that the Fourth Amendment protects, "so long as he has the right to exclude others from dealing with the property." *United States v. Perea*, 986 F.2d 633, 639–40 (2d Cir. 1993).

On the other hand, "[i]f a defendant has shown that he had a reasonable expectation of privacy in the place or object in question, the government has the burden of showing that the entry, search, or seizure was lawful because it fell within one of the exceptions to the warrant requirement." *United States v. Iverson*, 897 F.3d 450, 458 (2d Cir. 2018); *see, e.g., Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973). One such exception is a search incident to arrest, which allows officers to seize evidence an arrestee "might conceal or destroy," so long as the search is "substantially contemporaneous with the arrest and is confined to the immediate vicinity of the arrest." *United States v. Diaz*, 854 F.3d 197, 205 (2d Cir. 2017) (citing *Arizona v. Gant*, 556 U.S. 332, 339 (2009) & *Shipley v. California*, 395 U.S. 818, 819 (1969)).

Mr. Hamlett argues that "the Government cannot meet the threshold requirement that it demonstrate that the seizure of the cellphone was supported by probable cause." Memo. in Support of Mot. to Suppress Cellphone Evidence at 6, ECF No. 30. ("If law enforcement officers had probable cause to believe that any cellphone found with Mr. Hamlett would contain evidence of a crime, they could—and should—have obtained a search warrant along with the arrest warrant they obtained before arresting Mr. Hamlett"). Mr. Hamlett argues that "[t]here is nothing inherently suspicious about possessing a cellphone," and that "[n]othing about the other

7

circumstances of Mr. Hamlett's arrest provided investigators with a more concrete basis for believing that the cellphone found on Mr. Hamlett's person would provide evidence of a crime," since he was "arrested without incident, and the arrest reports show nothing of significance was discovered in the course of the arrest." *Id.* at 7. Mr. Hamlett also argues that if he possessed multiple phones, as the officers suspected, then "even if *a* phone associated with Mr. Hamlett might contain evidence . . . it would amount to little more than a guess that *this* phone was the one containing the evidence sought." *Id.* at 8. Mr. Hamlett also argues that "the Government unlawfully held the phone for over a month before seeking a search warrant," which, he argues, was an unreasonable delay. *Id.* (citing *United States v. Mitchell*, 565 F.3d 1347, 1352 (11th Cir. 2009)). Mr. Hamlett argues that the "Government made no apparent effort to secure a warrant in a timely manner." *Id.* at 8–9 (citing *United States v. Martin*, 157 F.3d 46, 54 (2d Cir. 1998)).

Mr. Hamlett then argues that the officers decided, with no search warrant and solely for "baldly investigative purposes, to conduct a search of the phone they recovered from Mr. Hamlett during the arrest." Mot. to Suppress Cellphone at 10, ECF No. 30. Mr. Hamlett finally argues that Agent Sharp searched his phone by manipulating it to cause its screen to illuminate.

The Court disagrees.

Here, Mr. Hamlett must establish that he has a reasonable expectation of privacy in the cellphone seized after his arrest warrant was executed. In order to do so, he cannot simply rest on the Fourth Amendment privacy rights of another. *See Plumhoff*, 134 S.Ct. at 2022 ("Our cases make it clear that 'Fourth Amendment rights are personal rights which ... may not be vicariously asserted.'"). Mr. Hamlett, however, has chosen not to offer any testimony to establish that he had an ownership or cognizable property interest in the cellphone at issue. He could do so with either his own testimony or the testimony of another. Instead, he has conceded that he did not own the

cellphone. Mot. to Suppress Cellphone at 9, ECF No. 30.[2] As a result, because he has not established a property interest in the phone, Mr. Hamlett is unable to "show that he had a reasonable expectation of privacy in the place or object searched." *See Delva*, 858 F.3d at 148.

In any event, even if Mr. Hamlett established a property right in the cellphone, the seizure of the cellphone occurred during a lawful arrest. Any contemporaneous search of Mr. Hamlett during that arrest would fall under the search-incident-to-arrest exception of the Fourth Amendment warrant requirement. *See Diaz*, 854 F.3d at 205 ("It makes no difference whether the search occurs before or after the arrest [], so long as it is 'substantially contemporaneous with the arrest and is confined to the immediate vicinity of the arrest.'") (citations omitted).

Here, the phone was seized from Mr. Hamlett's "right front pants pocket" after officers executed an arrest warrant for Mr. Hamlett. Hartford Police Report, Mot. to Suppress Ex. 1, ECF No. 30-1. This search therefore is "substantially contemporaneous with the arrest and is confined to the immediate vicinity of the arrest." *Diaz*, 854 F.3d at 205(citations omitted). In the absence of a challenge to the arrest as unsupported by probable cause, the seizure of Mr. Hamlett's phone, a seizure incidental to his arrest, therefore was lawful.

Mr. Hamlett's motion to suppress any evidence obtained from the cellphone is **DENIED**.

### B. The Pre-trial and Trial Identifications of Mr. Hamlett

A court will exclude a pre-trial identification "only if the procedure that produced the identification is 'so unnecessarily suggestive and conducive to irreparable mistaken identification that [the defendant] was denied due process of law." *Bautista*, 23 F.3d at 729 (citing *Stovall*, 388

---

[2] Indeed, the cellphone seized from Mr. Hamlett appears to be that of the Complainant. Search Warrant Affidavit Ex. 3, ECF No. 20-1. ("While HAMLETT was being processed, [Agent Sharp] checked TARGET PHONE 2 to determine if there was a passcode locking device. [Agent Sharp] immediately recognized the locked screen photograph as an image of the MV and her father . . . To determine if TARGET PHONE 2 was the MV's phone, [Agent Sharp] asked Detective Lewis to call the MV's phone number. When Det. Lewis dialed the number for MV, TARGET PHONE 2 rang").

9

U.S. at 302). Unless there is a "very substantial likelihood of irreparable misidentification . . . such evidence is for the jury to weigh." *Manson v. Brathwaite*, 432 U.S. 98, 116 (1977). "Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature." *Id*.

"When objection is made to a pre-trial identification, an analysis of whether the witness may identify the defendant at trial generally involves a two-step inquiry." *United States v. Tortora*, 30 F.3d 334, 338 (2d Cir. 1994). First, the court must determine whether the identification procedures "unduly and unnecessarily suggested that the defendant was the perpetrator." *Raheem*, 257 F.3d at 133. "If the procedures were not suggestive, the identification evidence presents no due process obstacle to admissibility . . . no further inquiry by the court is required." *Id.* "If pretrial procedures have been unduly suggestive, a court may nonetheless admit in-court identification testimony if the court determines it to be independently reliable." *United States v. Wong*, 40 F.3d 1347, 1359 (2d Cir. 1994).

Mr. Hamlett argues that "[t]he evidence demonstrates that the 'procedure' was unnecessarily suggestive because the two photographs displayed depicted a single individual, Christopher Hamlett." He argues that Detective Lewis "failed to have an officer who was unfamiliar with Mr. Hamlett as the suspect in this case, conduct the procedure," and "failed to include at least five 'fillers' of individuals resembling Mr. Hamlett in a sequential photograph presentation."

The Government responds that "[t]he single-photo identification procedure was . . . used to confirm [the complainant's] identification of the defendant," and that, "[t]here was little risk of a misidentification because the crime occurred over an extended period of time and involved a close association with the defendant." The Government also argues that the out-of-court

identification "was nonetheless independently reliable," and that "[e]ven assuming that the single photograph of Hamlett shown to [the complainant] was unduly suggestive, the [complainant's] history with Hamlett is independently reliable for purposes of an in-court identification." The Court agrees.

In this case, the two photographs Detective Lewis presented to the complainant were of a single individual. Because the Complainant knew Mr. Hamlett, however, the pretrial identification was not unnecessarily suggestive or conducive to irreparable mistaken identification, and the Court finds that the identification was sufficiently reliable. *Cf. Bautista*, 23 F.3d at 730 (finding that presenting a confidential informant with a suspect immediately following a raid was not unnecessarily suggestive). The Complainant had known Mr. Hamlett for about two months. Her identification therefore was merely confirmatory. *See United States v. Schovanec*, No. 3:07-cr-262 (JBA), 2008 WL 1836701, at *4 (D. Conn. Apr. 24, 2018) (finding that identification of the defendant, when identified "had ample opportunity to view and confirm the identity of the person who sold her drugs on [] three days in September 2007," including by standing "directly in front of him" and talking to him).

Because she knew Mr. Hamlett, there is a minimal concern of undue influence with respect to the two photographs of a single individual. Moreover, because the pre-trial identification procedures were not unduly suggestive, the "identification evidence presents no due process obstacle to admissibility" and no further inquiry is required into whether an identification can be made at trial. *Raheem*, 257 F.3d at 133.

Mr. Hamlett's motion to suppress the Complainant's out-of-court identification of Mr. Hamlett, and to preclude the in-court identification of him, is **DENIED**.

## C. Evidence Obtained from the Facebook Accounts

Under the Fourth Amendment to the U. S. Constitution, "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

"The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983) (internal quotations omitted). "In assessing the proof of probable cause, the government's affidavit in support of the search warrant must be read as a whole, and construed realistically." *United States v. Salameh*, 152 F.3d 88, 113 (2d Cir. 1998).

The question is "whether all the facts . . . viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime." *Florida v. Harris*, 568 U.S. 237, 248 (2013). A reviewing court "accord[s] great deference to a judge's determination that probable cause exists, and [] resolve[s] any doubt about the existence of probable cause in favor of upholding the warrant." *Salameh*, 152 F.3d at 113 (internal quotations omitted).

Mr. Hamlett argues that the search warrant for the two Facebook accounts "cannot withstand Fourth Amendment scrutiny" because "[t]he warrant application shows no nexus between the [two accounts] and the offense charged as required for probable cause to search." Mr. Hamlett further argues that the Government "cannot show 'good faith,'" because "[t]he warrant application is devoid of probable cause to search," and "the warrant application

knowingly misled the magistrate," and that, "[g]ood faith should not be a defense to Fourth Amendment violations that implicate First Amendment freedom."

The Government responds that Mr. Hamlett's "purposeful omission of any claim of ownership of the Facebook Accounts should end the court's inquiry on this motion to suppress, as Hamlett has no standing to challenge the evidence in the Facebook [a]ccounts." The Government also argues that "[t]he search warrant was supported by probable cause," and that, "[e]ven if the court were to find that Hamlett has standing to suppress the search warrant and that the search warrant was not valid, the evidence from the Facebook [a]ccounts should still be admissible under the good faith exception to the exclusionary rule." The Court agrees.

In this case, the affidavit in support of an application for a search warrant demonstrates why law enforcement believed that evidence of Mr. Hamlett's alleged crimes may be contained in his Facebook accounts. *See id.* at 113 (considering cumulative evidence that led officers and magistrate judge to believe that evidence would be found in searched area). Specifically, the affidavit noted that one of the Facebook accounts identified the user as "Cadillac Black," the alias by which the Complainant knew Mr. Hamlett. Furthermore, the affidavit noted that the Facebook user on the account indicated that he studied at "Pimp Academy." The affidavit also noted that the Facebook account for "Cadillac Black" was connected to the Complainant's Facebook account as "friends," and that the phone number that the Complainant used to communicate with Mr. Hamlett was linked to the Facebook page for "Cadillac Black."

The affidavit further states that Google searches of the phone number that the Complainant used to communicate with Mr. Hamlett revealed an advertisement on a website at the address www.adultlook.com. The advertisement listed the email address Chrishamlet53@yahoo.com as the contact. Furthermore, the affidavit notes that the same email

address used in the advertisement was also linked to the Facebook account for "KayRoc," and that the profile picture for KayRoc's Facebook account was similar to the profile picture used for the "Cadillac Black" account.

The affidavit further states that, based on the agent's training and experience, the agent is "aware that pimps or those working with pimps may take actual photos of the girls or women working as prostitutes, often using smart phones and/or digital cameras, and then post or share those pictures on Facebook or Instagram. The pictures often depict the girls or women naked or semi-naked and posing in a sexually explicit manner."

The Court concludes that the affidavit in support of the application for a search warrant to search the two Facebook accounts demonstrates probable cause to believe that the information contained therein was likely to contain evidence of the alleged offenses. *See Salameh*, 152 F.3d at 113 ("[w]e accord 'great deference' to a judge's determination that probable cause exists, and we resolve any doubt about the existence of probable cause in favor of upholding the warrant").

Mr. Hamlett's motion to suppress Facebook evidence therefore is **DENIED**.

## IV.   CONCLUSION

For the foregoing reasons, Mr. Hamlett's motions to suppress evidence are **DENIED.**

SO ORDERED at Bridgeport, Connecticut, this 27th day of September, 2018.

                                                                           /s/ Victor A. Bolden
                                                                           Victor A. Bolden
                                                                           United States District Judge