UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CHRISTOPHER HAMLETT. | No. 3:18-cr-24 (VAB) |

**RULING AND ORDER ON MOTIONS IN LIMINE**

The second superseding indictment in this case charges Christopher Hamlett ("Defendant") with two counts of sex trafficking of a minor, in violation of 18 U.S.C. §§ 1591(a)(1), (b)(2), and (c), five counts of using a facility in interstate and foreign commerce with intent to facilitate prostitution, in violation of 18 U.S.C. §§ 1952(a)(3)(A) and (b)(1)(i), and two counts of production of child pornography, in violation of 18 U.S.C. § 2251(a).

Both parties filed a number of motions in limine to restrict all or part of various forms of evidence.

For the following reasons, these various motions will be **GRANTED IN PART, DENIED AS MOOT IN PART, AND DENIED IN PART** without prejudice to renewal at trial.

**I.      FACTUAL AND PROCEDURAL HISTORY**

   **A.  Factual Background**

On February 8, 2018, Hartford police officers and Federal Bureau of Investigations agents arrested Mr. Hamlett at a residence in Hartford, Connecticut, based upon a criminal complaint signed by the Honorable Donna F. Martinez on February 7, 2018.

Mr. Hamlett is charged with two counts of sex trafficking, four counts of facilitating prostitution, and one count of child pornography.

### B. Procedural History

On February 14, 2018, a federal grand jury returned an indictment, charging Mr. Hamlett with one count of sex trafficking of a minor. Under this indictment, from in or about August 2017 through in or about November 2017, in and affecting interstate commerce, Mr. Hamlett allegedly did knowingly recruit, entice, harbor, transport, provide, obtain, advertise, and maintain by any means a minor victim, knowing and, except where the act constituting the violation is advertising, in reckless disregard of the fact that the minor victim had not attained the age of eighteen years and would be caused to engage in a commercial sex act.

On April 26, 2018, Mr. Hamlett was charged in a seven-count superseding indictment with two counts of sex trafficking of a minor and five counts of facilitating prostitution under the Travel Act. *See* ECF No. 56. On June 28, 2018, Mr. Hamlett was charged in a nine-count second superseding indictment with two counts of sex trafficking of a minor, five counts of facilitating prostitution under the Travel Act, and two counts of production of child pornography. ECF No. 133.

## II. STANDARD OF REVIEW

The purpose of a motion in limine is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence. *See Luce v. United States*, 469 U.S. 38, 40 n.2 (1984); *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996). "A district court's inherent authority to manage the course of its trials encompasses the right to rule on motions in limine." *Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 176 (S.D.N.Y. 2008).

Evidence should be excluded on a motion in limine only when the evidence is clearly inadmissible on all potential grounds. *Levinson v. Westport Nat'l Bank*, No. 3:09-cv-1955 (VLB), 2013 WL 3280013, at *3 (D. Conn. June 27, 2013). Courts considering a motion in limine may reserve judgment until trial, so that the motion is placed in the appropriate factual context. *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. L.E. Myers Co. Grp.*, 937 F. Supp. 276, 287 (S.D.N.Y. 1996).

## III. DISCUSSION

### A. Defense Motions in Limine

#### 1. Second Motion in Limine to Preclude Prior Misconduct

Under FED. R. EVID. 404(b)(1), "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." This evidence may, however, be admissible for other purposes, such as providing "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. FED. R. EVID. 404(b)(2). Moreover, "evidence of uncharged criminal activity is not considered other crimes evidence under Fed. R. Evid. 404(b) if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial." *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000); *United States v. Edwards*, 723 Fed. Appx. 48, 50 (2d Cir. 2018).

Mr. Hamlett argues that the Government should be precluded from presenting any evidence that Mr. Hamlett was involved in commercial sex work. Mr. Hamlett expects the Government to present testimony from a witness that previously worked with Mr. Hamlett as a

sex worker. Mr. Hamlett, however, argues that her likely testimony about appearing in a Backpage advertisement with photos of the alleged victims in this case is irrelevant and unnecessary because the probative value is minimal.

Mr. Hamlett contends that the Government should be precluded from introducing evidence of any person not listed within the indictment because that testimony is not involved in the same transaction charged in the indictment. Nor would his involvement in commercial sex with other people be bound up with evidence regarding commercial sex with the complainants. Finally, Mr. Hamlett maintains that testimony from other commercial sex workers separate and apart from the charged conduct would be prejudicial because it would invite jurors to convict Mr. Hamlett simply because he was allegedly a pimp.

In response, the Government argues that the anticipated testimony arose from the same series of transactions related to the charged offenses against Mr. Hamlett. The Government argues that it is limiting the witness's testimony to the advertisement of the two minor victims at issue. As the third related posting, the witness would be able to demonstrate how Mr. Hamlett solicited and obtained the photos in the posting. Her testimony is also intended to corroborate officer testimony regarding Mr. Hamlett's alleged commercial sex practices.

In the Government's view, the evidence would also have an alternative purpose of illustrating Mr. Hamlett's planning and preparation for commercial sex acts of the complainants, including advertising their services, knowledge of client appointments to meet with them, facilitating their commercial sex acts, and absence of a mistake in promoting their prostitution. Finally, this information would not be prejudicial because the testimony would be no more inflammatory than the sex trafficking charges already at issue. The Court agrees.

This potential testimony is related to Mr. Hamlett's prior conduct within the category of exceptions outlined in Rule 404(b). Alternatively, the testimony could be admissible because it is related to the "same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime at trial." *See Carboni*, 204 F.3d at 44.

Because the trial has not yet occurred, however, this evidence has not been presented in context yet, Mr. Hamlett's motion is **DENIED WITHOUT PREJUDICE** to renewal at trial, to the extent the evidentiary foundation outlined above has not been properly laid. *See Nat'l Union Fire Ins.*, 937 F. Supp. at 287 ("the Court will reserve judgment on the motion until trial when admission of particular pieces of evidence is in an appropriate factual context").

## 2. Second Motion in Limine to Preclude Reference to "Victim" or "Minor"

The Second Circuit has long recognized that "[t]he government has broad latitude in the inferences it may reasonably suggest to the jury during summation. However, a prosecutor's statements during summation, if improper, will result in a denial of the defendant's due process rights if the statements cause substantial prejudice to the defendant." *United States v. Casamento*, 887 F.2d 1141, 1189 (2d Cir.1989) (citations omitted), *cert. denied*, 493 U.S. 1081 (1990).

Defendant expects the parties will agree to the complaining witnesses being referred to as "Jane Doe" and "Mary Smith" throughout the evidentiary portion of the trial, as was previously agreed to by the parties regarding Jane Doe. But Defendant seeks to prohibit the Government from using the terms "victim," "minor victim," or "minor" during closing arguments and preclude the Government from using the term "minor" throughout the entire proceeding.

Mr. Hamlett contends that use of these terms would violate his Fifth Amendment due process right to be presumed innocent and to require the Government to prove each element of the case because use of the term "victim" infers that the person has suffered a criminal act. The use of the term by the Government therefore would shift the burden from the Government to prove Mr. Hamlett's guilt to Mr. Hamlett having to defend against his presumptive guilt. Similarly, the term "minor" assumes one of the criminal elements of the offenses have already been established by adopting the view that Jane Doe and Mary Smith were under the age of eighteen during the periods of the indictment. Defendant believes that use of these terms during closing argument conveys impermissible witness credibility to the jury.

The Government counters by arguing that prohibiting the use of the terms "minor" and "victim" at summation is contrary to Second Circuit precedent that allows the Government "to argue all inferences that may permissibly be drawn from the evidence admitted." *United States v. Rodriguez*, 968 F.2d 130, 143 (2d Cir. 1992). The Government anticipates entering evidence that neither Jane Doe nor Mary Smith were eighteen during the period they allegedly worked as prostitutes, which will be corroborated by birth certificates and advertisements for their sexual services. Once the trial reaches summation, the Government predicts that it will have submitted enough direct evidence to show that Jane Doe and Mary Smith were minors during the relevant time. Finally, the Government is not inappropriately vouching for the credibility of Jane Doe and Mary Smith, but will merely be making statement based on the evidenced presented during testimony. The Court agrees.

Here, the parties have already stipulated that the complainants will be referred to as Jane Doe and Mary Smith at trial. Moreover, the parties have agreed that the Government will not use the terms "victim" or "minor victim" to refer to either complainant during voir dire, opening

statements, or the evidentiary portions of a trial. Although the Government can be amenable to these sorts of agreements, there is nothing to indicate that the Court is required to extend these pacts between parties to bind the Government during closing argument. Indeed, "[t]he government is entitled, in summation, to argue all inferences that may permissibly be drawn from the evidence admitted." *Rodriguez*, 968 F.3d at 143. As a result, if the Government has properly laid an evidentiary foundation from which the jury may infer that Jane Doe and Mary Smith are minors, then the Government may urge the jurors to infer from the evidence at trial that they were minors in its closing argument.

Nevertheless, because the trial has not yet occurred and the Court cannot presume that a proper evidentiary foundation will be laid until the close of the evidence, Mr. Hamlett's motion is **DENIED WITHOUT PREJUDICE** to renewal at trial**.** *See Nat'l Union Fire Ins.*, 937 F. Supp. at 287 ("the Court will reserve judgment on the motion until trial when admission of particular pieces of evidence is in an appropriate factual context").

### 3. Second Motion in Limine Regarding Witness Exclusion and Order of Testimony

Mr. Hamlett seeks to exclude case agents from observing pretrial motions, opening statements, witness testimony, or closing arguments. Mr. Hamlett argues that only federal case agents, and local law enforcement officers working with federal agents, should be permitted to remain in the courtroom during other witness testimony under the Federal Rules of Evidence. Mr. Hamlett then argues that exempted case agents should testify before non-exempt Government witnesses that must be excluded from the courtroom, or not testify at all. Finally, Mr. Hamlett argues that witnesses should be directed not to read trial testimony, discuss the case, or discuss their testimony with anyone other than counsel.

The Government responds by having one officer testify first and limiting the scope of the other officer's testimony. First, the Government plans to have Detective Lewis testify first, and then remain at counsel's table afterward. Second, Special Agent Sharp's testimony will be limited to introducing and discussing business records received during the course of the investigation. In addition, the Government will not allow witnesses to read trial transcripts, nor will witnesses the Government discuss the case or witness testimony.

The Court finds that this representation is sufficient to address Mr. Hamlett's concerns regarding the Government's order of witnesses. Any subsequent modification of witness order or testimony, however, remains subject to the Federal Rules of Evidence and Mr. Hamlett is not precluded from objecting to specific witness testimony on any proper grounds simply because of this Order. *See Nat'l Union Fire Ins.*, 937 F. Supp. at 287 ("the Court will reserve judgment on the motion until trial when admission of particular pieces of evidence is in an appropriate factual context").

As a result, this motion is **DENIED AS MOOT.**

### 4. Second Motion in Limine for Witness to Remain Under Subpoena

Mr. Hamlett requests that the Court order that any released Government witnesses be considered under defense subpoena. The Government does not object to the Court ordering that any released Government witnesses be considered under defense subpoena for the duration of the trial.

This motion therefore is **GRANTED**.

### 5. Second Motion in Limine to Preclude Reference to "Cadillac Black"

The use of an alleged alias for a criminal defendant during a trial may be unduly prejudicial. As a result, this Court must make sure that any use of an alleged alias of Mr. Hamlett's does not result in "substantial prejudice, by so infecting the trial with unfairness as to [result in] a denial of due process." *United States v. Farmer*, 483 F.3d 131, 147 (2d Cir. 2009).

Mr. Hamlett argues that any use of his aliases is inherently prejudicial because of the implication that he must conceal his identity. He contends that this is especially prejudicial because of the sex-trafficking allegations. Mr. Hamlett fears that the jury would view this nickname as strongly suggestive of a criminal disposition.

The Government responds by arguing that the use of aliases are intrinsically tied to Mr. Hamlett's identity and involvement in the charged criminal conduct. The Government intends to introduce documentary evidence linking Mr. Hamlett to the nicknames and showing that the nicknames were related to the illegal conduct charged in the indictment. Mr. Hamlett has also disputed the identification and could attempt to minimize his relationship with Jane Doe and Mary Smith, so witness familiarity with aliases would become even more probative. Finally, the Government asserts that the nicknames are neither prejudicial nor inflammatory.

To the extent witnesses know Mr. Hamlett by any of his aliases, they will be allowed to testify to their personal knowledge, subject to proper foundation during direct examination. *See Farmer*, 483 F.3d at 146 (suggesting that refrence to a criminal defendant by a nickname or alias "by witnesses who know him by that name" is proper); *see also* FED. R. EVID. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the

witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony").

Of course, any such use of testimonial evidence regarding Mr. Hamlett's aliases remains subject to the Federal Rules of Evidence and Mr. Hamlett is not precluded from objecting to any specific use an alias on any proper grounds simply because of this Order. *See Nat'l Union Fire Ins.*, 937 F. Supp. at 287 ("the Court will reserve judgment on the motion until trial when admission of particular pieces of evidence is in an appropriate factual context").

As a result, the motion is **DENIED WITHOUT PREJUDICE** to renewal at trial.

### B. Government Motions in Limine

#### 1. Sealed Motion in Limine to Preclude Evidence of Jane Doe's Mental Health History

Under FED. R. EVID. 402, relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

The Confrontation Clause of the Sixth Amendment also guarantees a criminal defendants the right to confront the witnesses against them, a right that "means more than being allowed to confront the witness physically," for "[t]he main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination," *Davis v. Alaska*, 415 U.S. 308, 315–16 (1974) (internal quotation marks and emphasis omitted), and "[s]ubject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness' story to test the witness'

perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, i.e., discredit, the witness." *Id.* at 316.

The opportunity to cross-examine is especially "important where the evidence consists of the testimony of individuals whose memory might be faulty or who, in fact, might be perjurers or persons motivated by malice, vindictiveness, intolerance, prejudice, or jealousy." *Greene v. McElroy*, 360 U.S. 474, 496 (1959).

The Government seeks to prohibit Mr. Hamlett from introducing evidence or cross-examining any witnesses regarding Jane Doe's prior mental health diagnoses or treatment. The Government argues that Jane Doe's mental health history does not affect her ability to perceive the events in the indictment.

The Government further contends that the information regarding Jane Doe's DCF records do not have firsthand medical treatment records; rather, the documents were rife with hearsay and amalgamate observations of social workers, group home staff, former family members, and others that came into contact with Jane Doe, while she was in DCF custody. These documents mostly include informal diagnoses made by non-clinical professionals comprised of second- and third-hand accounts of Jane Doe's mental health history.

The Government also argues that, even assuming that these diagnoses are accurate, they are not indicative of an inability to correctly perceive events nor are the records relevant to her credibility. Additionally, none of the evidence in DCF records would suggest that Jane Doe suffered from psychological problems during the relevant time periods of the second superseding indictment.

Finally, the Government argues that Mr. Hamlett has not offered the citation, study, expert testimony, or medical records to support his contention that Jane Doe was unable to accurately perceive the events in question. Because there is no foundation for the line of cross-examination, such cross examination would only serve to embarrass her, harass her, or deter her or others from testifying. Moreover, any probative value in bringing in Jane Doe's mental health history would be unfairly prejudicial to the jury and complicate the record.

In response, Mr. Hamlett argues that he has no interest in impugning the reputation or credibility of Ms. Doe generally and is only interested in exposing the jury to all relevant facts as to her credibility as a witness. Mr. Hamlett argues that the Sixth Amendment's Confrontation Clause allows a cross-examiner to impeach and discredit a witness whose memory may be faulty or who may have bias. Mr. Hamlett also asserts that the DCF records include clinical records that are relevant. Mr. Hamlett contends that previous diagnoses of Jane Doe, her history of self-harm, and use of medications related to mental health disorders indicate that her credibility as a witness and the veracity of her statements should be available for cross-examination. Mr. Hamlett would focus not on the past diagnosis of Jane Doe, but on whether those mental health disorders continued through the events described in the superseding indictment when there is no indication that she continued to take her medication.

While Mr. Hamlett will not be prohibited from introducing evidence that a witness's memory might be faulty or that they are motivated by an ulterior motive, in order for the jury to infer that there is a correlation between any of the victims's mental health diagnoses and their credibility as a witness, a proper evidentiary foundation will have to be laid. *See United States v. Sasso*, 59 F.3d 341, 347–48 (2d Cir. 1995) ("Evidence of a witness's psychological history may be admissible when it goes to her credibility. . . In assessing the probative value of such

evidence, the court should consider such factors as the nature of the psychological problem, [] the temporal recency or remoteness of the history, [] and whether the witness suffered from the problem at the time of the events to which she is to testify, so that it may have affected her 'ability to perceive or to recall events or to testify accurately'") (citations ommitted).

Indeed, "[o]ne's psychiatric history is an area of great personal privacy which can only be invaded in cross-examination when required in the interest of justice" and '[i]f of minimal probative value," an inquiry into the mental health history of the victim would be "manifestly unfair and unnecessarily demeaning of the witness." *Velasquez v. United States*, 801 A.2d 72, 79 (D.C. 2002) (upholding the trial court finding that the defendant failed to justify invasion in to wtness's privacy regarding prior mental health history because there was no expert opinion offfered to support the sefense theory that the delusional episode was connectedto the claims at issue) (citations omitted).

Moreover, given that the nature and extent of any mental health diagnosis is beyond the purview of a jury, this foundation is likely to be laid propely only through expert testimony under FED. R. EVID. 702. *Andrews v. Metro. N. Commuter R. Co.*, 882 F.2d 705, 708 (2d Cir. 1989) ("For an expert's testimony to be admissible under this Rule, however, it must be directed to matters within the witness' scientific, technical, or specialized knowledge and not to lay matters which a jury is capable of understanding and deciding without the expert's help").

In the absence of such an evidentiary foundation, any question suggesting that a victim's testimony should not be believed or is less credible simply because of a particular mental health diagnosis is likely not to be permitted. *Holmes v. South Carolina,* 547 U.S. 319, 326 (2006) ("well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or

13

potential to mislead the jury"); *see e.g.,* FED. R. EVID. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulatice evidence").

Nevertheless, because the trial has not yet occurred and the Court cannot presume that a proper evidentiary foundation will not be laid, the Government's motion is **DENIED WITHOUT PREJUDICE** to renewal at trial**.** *See Nat'l Union Fire Ins.*, 937 F. Supp. at 287 ("the Court will reserve judgment on the motion until trial when admission of particular pieces of evidence is in an appropriate factual context").

### 2. Second Motion in Limine to Preclude Evidence of Minor's "Consent"

Under FED. R. EVID. 412(a), evidence offered to prove a victim engaged in sexual behavior or to prove a victim's sexual predisposition is prohibited. *See United States v. Rivera*, 799 F.3d 180, 184 (2d Cir. 2015); *see e.g., United States v. Graham*, 707 Fed. Appx. 23, 28–29 (2d Cir. 2017) (affirming the district court's grant of a motion to preclude evidence that victims worked as prostitutes because "'evidence offered to prove that a victim engaged in other sexual behavior' is generally inadmissible in a proceeding involving sexual misconduct"). But behavior can be entered for the limited purpose of proving that someone other than the defendant was the source of physical evidence, to prove consent, or if exclusion of the evidence would violate the defendant's constitutional rights. *United States v. Corley*, 679 Fed. Appx. 1, 4 (2d Cir. 2017); FED. R. EVID. 412(b)(1).

Rule 412 aims to safeguard the "alleged victim against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate

14

sexual details." *Rivera*, 799 F.3d at 184 (citing Fed. R .Evid. 412 advisory committee's note). Rule 412, however, does not bar "evidence whose exclusion would violate the defendant's constitutional rights." FED. R. EVID. 412(b)(1)(C). This includes the constitutional right to "a meaningful opportunity to present a complete defense" at his trial, *Holmes*, 547 U.S. at 324, and to confront the witnesses against him including by "impeach[ing] the credibility of a prosecution witness by cross-examination directed at possible bias," *Davis*, 415 U.S. at 309.

In *Rivera*, for example, the trial court excluded evidence of a victim's sexual behavior during a motion in limine. Before the trial, the Government moved in limine to preclude the defendants from inquiring or offering evidence regarding the victim's sexual behavior or work in the commercial sex industry. 799 F.3d at 183. The defendants sought to introduce evidence that the victims engaged in commercial sex work without force, fraud, or coercion. *Id.* During the trial, defense counsel elicited testimony that the victims consented to being prostitutes. *Id.* at 184. The defendant was convicted and appealed, arguing that the district court erred in granting the motion in limine to exclude cross-examination regarding the victim's commercial sex work. *Id.* The Second Circuit concluded that, even though the victims had been prostitutes, their prior commercial sex work had no relevant use in cross-examination for the issue of coercion. *Id.* at 186. The Second Circuit further held that, even without pursuing the precluded line of inquiry, the defense had the ability to cross-examine victims and argue they engaged in prostitution for financial reasons—thus, not the result of force, fraud, or coercion. *Id.*

In contrast, the trial court in *United States v. Alvarez*, 601 Fed. Appx. 16 (2d Cir. 2015) partially admitted evidence of the victim's history of prostitution prior to meeting the defendant. *Id.* at 18. In that case, the defendant appealed because the trial court excluded evidence of the victim's continued prostitution after leaving the defendant. *Id.* at 17. The district court excluded

evidence of the victim's prostitution after meeting the defendant because that evidence was bit critical to the defendant's constitutional rights. *Id.* at 18. The Second Circuit affirmed this decision and concluded that there was no constitutional deprivation because the defense was able to "to present a complete defense and to impeach the government's witnesses using the admitted evidence of the victims' earlier prostitution." *Id.*

Here, the Government seeks to prohibit Mr. Hamlett from introducing evidence or cross-examining either Jane Doe or Mary Smith regarding their sexual behavior or sexual predisposition. The Government argues that Mr. Hamlett should be precluded from cross-examining or introducing evidence related to the sexual behavior of Jane Doe and Mary Smith unrelated to the charged conduct. The Government further argues that introduction of this sexual behavior might be more prejudicial than probative because this evidence would confuse the jury.

Finally, the Government contends that Mr. Hamlett should be unable to argue that Jane Doe and Mary Smith were not forced into commercial sex acts by Mr. Hamlett and that he was merely sharing the money earned by them. Moreover, the Government seeks to prohibit introducing evidence or argument that the age of consent in Connecticut is sixteen because that has no bearing on the definition of a minor under the federal laws charged here.

In response, Mr. Hamlett argues that the Rules of Evidence do not apply to false claims of sexual abuse or sexual behavior, that the evidence is necessary to support the argument that someone other than Mr. Hamlett committed the alleged acts, and that the probative value of the prior false allegations of sexual abuse substantially outweigh possible prejudice.

In support, Mr. Hamlett cites to Advisory Committee Notes on Rule 412 that evidence offered to prove allegedly false prior claims is not barred by Rule 412. Mr. Hamlett further

16

argues that the evidence would not be introduced as a bearing on sexual morals, but would only be used to assess the credulity of Jane Doe and Mary Smith. Mr. Hamlett also seeks to make the argument that Jane Doe and Mary Smith engaged in prostitution and produced child pornography without any involvement by Mr. Hamlett based on prior and subsequent sexual behavior. Finally, Mr. Hamlett argues that any prejudice is outweighed by his right to defend himself against the charges against him. The Court disagrees.

Under the Second Circuit's decision in *Rivera*, "evidence of victims' prior acts of commercial sex is irrelevant to whether those victims were *coerced into* working as prostitutes." *Rivera*, 799 F.3d at 185 (emphasis in original). Indeed, as the Second Circuit noted there, "[t]he very purpose of the Rule [412] is to preclude defendants from arguing that because the victim previously consented to have sex—for love or money—her claims of coercion should not be believed." *Id.* As a result, Mr. Hamlett's efforts to introduce evidence about the prior commercial sexual acts of Jane Doe and Mary Smith should fail.

Nevertheless, this motion is **DENIED WITHOUT PREJUDICE** to renewal at trial, to the extent there is some other more appropriate basis for the admission of this evidence presented at that time.

### 3. Second Motion in Limine Regarding Reasonable Opportunity to Observe

As the Second Circuit has held, "[i]n a prosecution under § 1591, the government may satisfy its burden of proof with respect to the defendant's awareness of the victim's age by proving any of the following beyond a reasonable doubt: (1) the defendant knew that the victim was under eighteen, (2) the defendant recklessly disregarded the fact that the victim was under

17

eighteen, *or*, (3) the defendant had a reasonable opportunity to observe the victim." *United States v. Robinson*, 702 F.3d 22, 34 (2d Cir. 2012) (emphasis in original).

The Government seeks to preclude Mr. Hamlett from suggesting to the jury during the jury address, witness examination, or through any other evidence that they may acquit Mr. Hamlett because he may have believed that Jane Doe or Mary Smith was over the age of eighteen. The Government states that Mr. Hamlett had reasonable opportunities to observe that both Jane Doe and Mary Smith were under the age of eighteen and that Section 1591(c) is a strict liability statute.

Mr. Hamlett responds by arguing that his attorneys do not intend to argue or suggest a verdict based on jury nullification. Mr. Hamlett will contest that he had a reasonably opportunity to observe under the statute, which is not defined by law, because defense counsel has an obligation to question its meaning and whether it can be proved beyond a reasonable doubt.

Because Mr. Hamlett's counsel has asserted that they have no intention of arguing or suggesting a verdict based on jury nullification, that point is rendered moot.

Mr. Hamlett will be allowed to offer evidence that he did not have a reasonable opportunity to observe Jane Doe and Mary Smith. And, consistent with the Second Circuit's decision in *United States v. Robinson*, the jury will be instructed that the Government may satisfy its burden of proof by demonstrating beyond a reasonable doubt that Mr. Hamlett did have a reasonable opportunity to observe these victims. *See Robinson*, 702 F.3d at 34.

Of course, any such evidence Mr. Hamlett seeks to introduce on his behalf remains subject to further objection under the Federal Rules of Evidence. As a result, this motion is **DENIED AS MOOT IN PART AND DENIED WITHOUT PREJUDICE IN PART** to

renewal at trial. *See Nat'l Union Fire Ins.*, 937 F. Supp. at 287 ("the Court will reserve judgment on the motion until trial when admission of particular pieces of evidence is in an appropriate factual context").

## IV. CONCLUSION

For the foregoing reasons, the motions in limine are **GRANTED IN PART, DENIED AS MOOT IN PART, AND DENIED IN PART** without prejudice to renewal at trial.

**SO ORDERED** at Bridgeport, Connecticut, this 5th day of October, 2018.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE