### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES,<br>    *Plaintiff,*<br><br>v.<br><br>CHRISTOPHER HAMLETT,<br>    *Defendant.* | No. 3:18-cr-00024 (VAB) |

### RULING AND ORDER ON MOTION FOR COMPASSIONATE RELEASE

Christopher Hamlett ("Defendant") has moved for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). Mot. for Sentence Reduction, ECF No. 393 (Dec. 22, 2020) ("Def.'s Mot."); Mem. of L. in Supp. of Mot. for Sentence Reduction, ECF No. 394 (Dec. 22, 2020) ("Def.'s Mem.").

The United States (the "Government") opposes Mr. Hamlett's motion. Gov't Mem. in Opp'n to Mot. for Sentence Reduction, ECF No. 399 (Jan. 8, 2021) ("Gov't Opp'n).

For the reasons set forth below, Mr. Hamlett's motion for compassionate release is **DENIED**.

### I.    BACKGROUND

On February 14, 2018, a grand jury returned an indictment against Mr. Hamlett, charging him with sex trafficking of a minor in violation of 18 U.S.C. §§ 1591(a)(1), (b)(2) and (c). Indictment, ECF No. 11 (Feb. 14, 2018).

On April 26, 2018, a grand jury returned a seven-count superseding indictment against Mr. Hamlett, charging him with sex trafficking of a minor in violation of 18 U.S.C. §§ 1591(a)(1), (b)(2) and (c) and facilitating prostitution in violation of the Travel Act, 18 U.S.C. §§ 1952(a)(3)(A) and (b)(i)(1). Superseding Indictment, ECF No. 56 (Apr. 26, 2018).

1

On June 28, 2018, a grand jury returned a nine-count second superseding indictment against Mr. Hamlett, charging him with sex trafficking of a minor in violation of 18 U.S.C. §§ 1591(a)(1), (b)(2) and (c); facilitating prostitution in violation of the Travel Act, 18 U.S.C. §§ 1952(a)(3)(A) and (b)(i)(1); and production of child pornography in violation of 18 U.S.C. § 2251(a). Second Superseding Indictment, ECF No. 133 (June 28, 2018).

In October 2018, the Court conducted a jury trial as to Mr. Hamlett. *See* Min. Entry, ECF No. 281 (Oct. 9, 2018); Min. Entry, ECF No. 285 (Oct. 10, 2018); Min. Entry, ECF No. 286 (Oct. 11, 2018); Min. Entry, ECF No. 293 (Oct. 12, 2018); Min. Entry, ECF No. 296 (Oct. 15, 2018); Min. Entry, ECF No. 297 (Oct. 16, 2018).

On October 16, 2018, the jury found Mr. Hamlett guilty of all nine counts of the Second Superseding Indictment. Jury Verdict Form, ECF No. 305 (Oct. 16, 2018).

On September 19, 2019, the Court sentenced Mr. Hamlett to a total term of imprisonment of 15 years, a term of supervised release of five years, and a special assessment of $900. J., ECF No. 374 (Sept. 19, 2019); Corr. J., ECF No. 378 (Sept. 19, 2019).

On September 24, 2019, Mr. Hamlett filed a notice of appeal of his conviction and sentence. Notice of Appeal, ECF No. 380 (Sept. 24, 2019). On November 24, 2020, Mr. Hamlett filed his brief on appeal with the Second Circuit. *See* Brief for Def.-Appellant, *United States v. Hamlett*, No. 19-3069 (2d Cir. Nov. 24, 2020), Dkt. No. 87. The due date for the Government's brief is February 22, 2021. *See id.*, No. 19-3069, Dkt. No. 85.

On December 22, 2020, Mr. Hamlett moved for a reduction of sentence under 18 U.S.C. § 3582(c). Def.'s Mot.

On January 8, 2021, the Government opposed Mr. Hamlett's motion. Gov't Opp'n.

On January 19, 2021, Mr. Hamlett replied to the Government's opposition. Resp. to Gov'ts Opp'n to Mot. for Sentence Reduction, ECF No. 405 (Jan. 19, 2021) ("Def.'s Reply").

On January 28, 2021, the Court held a videoconference hearing on the motion. Min. Entry, ECF No. 407 (Jan. 28, 2021).

## II.    STANDARD OF REVIEW

### A.   Motion to Reduce Sentence Under § 3582(c)

A court may modify a term of imprisonment on compassionate release grounds in two circumstances: (1) "upon motion of the Director of the Bureau of Prisons [("BOP")];" or (2) "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . ." 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Gotti*, 433 F. Supp. 3d 613, 614 (S.D.N.Y. 2020) ("In December 2018, as part of the First Step Act, Congress worked a change to th[e] rule of long standing" that a court could only modify a sentence upon motion from the Bureau of Prisons. "A court may now consider a motion for compassionate release made by a defendant who has exhausted his administrative remedies by petitioning the Director of the BOP to make such a motion, assuming the Director fails to act on the inmate's request within thirty days[.]").

A court may only grant such a modification if it finds that "extraordinary and compelling reasons warrant" release. In determining whether to grant a motion to modify a sentence, a court must also consider the factors set forth in 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(c)(1)(A).

### B.   Jurisdiction Pending Appeal

"The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects

of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982). The rule "does not preclude a district court, after notice of appeal has been filed, from correcting clerical errors under [Federal Rule of Criminal Procedure] 36 or from acting to aid the appeal," but prohibits "substantive modifications of judgments" while the appeal remains pending. *United States v. Ransom*, 866 F.2d 574, 575-76 (2d Cir. 1989) (internal quotation marks omitted).

Under Federal Rule of Criminal Procedure 37, however, "[i]f a timely motion is made for the relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may" do any of the following: "(1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." Fed. R. Crim. P. 37(a). "Accordingly, [under] Rule 37, district courts may deny—but not grant—motions over which they lack jurisdiction because of a pending appeal." *United States v. Moore*, No. 18-CR-167 (KMW), 2021 WL 260131, at *2 (S.D.N.Y. Jan. 25, 2021) (denying a motion for compassionate release, and noting the court "lack[ed] jurisdiction to grant the [m]otion" under Rule 37, where an appeal was pending).

## III.   DISCUSSION

### A.  Jurisdiction

Many courts in this Circuit have concluded, under the rule set forth in *Griggs*, that they lack jurisdiction to grant a motion for sentence reduction under Section 3582(c) where an appeal is pending. *See, e.g.*, *Moore*, 2020 WL 260131, at *1; *United States v. Martin*, No. 18-CR-834-7 (PAE), 2020 WL 1819961, at *1 (S.D.N.Y. Apr. 10, 2020); *United States v. Weiskopf*, No. 19-CR-6093-FPG, 2020 WL 4013188, at *1 (W.D.N.Y. May 15, 2020) (slip op.); *United States v. Shahbaz*, No. 3:18-cr-170 (VLB), 2020 WL 4381944, at *2-3 (D. Conn. July 31, 2020) (slip op.);

*United States v. Skelos*, No. 15-cr-317 (KMW), 2020 WL 2508739, at *2 (S.D.N.Y. May 15, 2020) (slip op.).

Though Mr. Hamlett's appeal remains pending before the Second Circuit, he argues that this Court nonetheless "retains jurisdiction" to grant his motion because his appeal "did not raise an issue related to his custodial sentence, or any part of his sentence for that matter." Def.'s Mem. at 2 (citing *United States v. Bruce*, No. 1:17-cr-00077-DAD-BAM, 2020 WL 5257599, at *4 (E.D. Cal. Sept. 3, 2020)). The Government responds that the *Griggs* rule "applies to a district court's jurisdiction to decide compassionate release motions under 18 U.S.C. § 3582," but the Government does not address the rule's application where a defendant has not attacked his sentence on appeal. Gov't Opp'n at 8-9.

Mr. Hamlett's argument relies solely on *Bruce*, in which the Eastern District of California rejected the argument that the pending appeal stripped the district court of jurisdiction to decide a motion for sentence reduction under Section 3582(c) because the appeal pertained only to "the merits of his conviction," not his sentence, and therefore found that the motion did "not involve aspects of [the] defendant's case that [we]re the subject of his pending appeal." 2020 WL 5257599 at *4. As Mr. Hamlett argues, his appeal, like the appeal in *Bruce*, raises only issues pertaining to his conviction, and he does not challenge his sentence. Def.'s Mem. at 2.

Several courts, including at least one in this Circuit, have applied the *Griggs* rule to find the Court lacked jurisdiction to grant a Section 3582 motion where the defendant's pending appeal did not directly attack his sentence. *See, e.g.*, *United States v. Genovese*, No. 18-cr-183, 2020 WL 4004164, at *1-2 (S.D.N.Y. July 15, 2020) (concluding that, where the defendant had "timely filed a notice of appeal challenging his conviction," the Court "lack[ed] jurisdiction to decide [his § 3582] motion," and instead denying the motion on the merits under Rule 37); *United States v.*

*Burrus*, No. 19-284, 2020 WL 3799753, at *3 (W.D. Pa. July 7, 2020) (slip op.) (concluding that, where the defendant had appealed the court's ruling on a motion to suppress, "[b]ecause [the] [d]efendant's appeal remains pending," its "jurisdiction to decide the compassionate release motion [was] confined to" the avenues set forth under Rule 37); *United States v. Alston*, No. 19-158 (SDW), 2020 WL 4756489, at *2 (D.N.J. Aug. 17, 2020) (concluding that, where the defendant had "appealed his conviction," the court was "deprive[d] . . . of jurisdiction over any matter relating to his sentence, including the instant request for compassionate release," and applying Rule 37). And while the Second Circuit has made clear that while there are some exceptions to the rule set forth in *Griggs*, such as "attorneys' fees," "proceedings on merits after grant or denial of preliminary injunction," "judgment which does not determine [the] entire action," and "clerical error," *Martin*, 2020 WL 1819961, at *1 (citing *Tancredi v. Met. Life. Ins. Co.*, 378 F.3d 220, 225 (2d Cir. 2004); *N.Y. State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1350 (2d Cir. 1989); *Leonhard v. United States*, 633 F.2d 599, 610 (2d Cir. 1980)), "none appears applicable here," *id.*; *see also United States v. Viola*, 555 F. App'x 57, 60 (2d Cir. 2014) (a notice of appeal precludes the court's ability "to modify a judgment substantively," although it may "merely clarif[y]" its order). The Advisory Committee's notes to Rule 37 state that "[i]n the criminal context, the Committee anticipates that . . . Rule 37 will be used primarily if not exclusively for . . . motions under [§] 3582(c)." *See* Advisory Comm. Notes, Fed. R. Crim. P. 37.

The Court, however, need not definitively resolve the issue of whether it retains jurisdiction over Mr. Hamlett's motion to reduce his sentence under Section 3582. Given the text of Rule 37, which permits the Court to, "[i]f a timely motion is made for relief that the court lacks authority to grant" because of a pending appeal, either "(1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or

that the motion raises a substantial issue," Fed. R. Crim. P. 37(a), the question of whether the Court

lacks jurisdiction is relevant only were the Court inclined to, on the merits, grant Mr. Hamlett's

motion. *See Martin*, 202 WL 1819961, at *1 ("[Rule 37] allows district courts to deny, but not to

grant, a motion for which it lacks jurisdiction due to a pending appeal."). Because the Court would

deny Mr. Hamlett's motion on the merits if he had not filed a notice of appeal, the Court will, in

the interest of judicial economy, reach the merits and deny the motion, as permitted both in the

event that the Court were to find it retained jurisdiction over the motion or if it chose to proceed

under the avenues set forth by Rule 37. *See* Fed. R. Crim. P. 37.

### B.  The Merits

Section 3582(c)(1)(A) authorizes courts "to consider the full slate of extraordinary and

compelling reasons that an imprisoned person might bring before [the court] in motions for

compassionate release." *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020) ("Neither

Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits

the district court's discretion."); *see United States v. Gonzalez*, No. 3:15-cr-00223 (MPS), 2020

WL 5793304, at *1 (D. Conn. Sept. 29, 2020) (slip op.) ("[B]ecause [Mr.] Gonzalez – and not the

[BOP] – brings the instant motion, [the Court is] not bound by the Sentencing Commission's

outdated policy statement applicable to Section 3582(c)(1)(A) . . . , which the Second Circuit

recognized as only applying to motions for sentence reduction brought by the BOP.") (citing

*Brooker*, 976 F.3d at 230, 235-36) (internal citations omitted).

Mr. Hamlett moves this Court to grant his motion for compassionate release because "[a]

combination of factors, including Mr. Hamlett's medical vulnerability to COVID-19 and the

pandemic's effect on the conditions of his confinement" constitute extraordinary and compelling

reasons that warrant release. Def.'s Mem. at 12. Mr. Hamlett argues that he suffers from several

medical conditions, including "morbid obesity, hypertension, nasal polyps, and sinusitis," and that "[a]ny one of these conditions alone would leave [him] at greater risk, but their combination has a compounding effect that places him in serious danger." *Id.* at 16 (emphasis omitted). He also argues that the conditions of confinement at his facility, Danbury Federal Correctional Institution ("FCI Danbury"), "weigh in favor of a sentence reduction," noting that at the time of filing, there were 95 inmate cases and no active staff cases of COVID-19 at FCI Danbury.[1] *Id.* at 22-23.

Mr. Hamlett also argues that "[t]he COVID-19 pandemic has made Mr. Hamlett's incarceration much more punitive than anticipated by the Court," which has been "exacerbated by the failure of Wyatt [(his former facility)] and BOP to address his obstructive nasal polyps in an effective manner," which has allegedly resulted in him "suffer[ing] from infections, los[ing] his sense of smell and taste, [being] unable to breath through his nose, ha[ving] poor nasal drainage, and suffer[ing] pain for nearly three years since his arrest." *Id.* at 25. He notes that he "has not incurred any BOP disciplinary history," and has a "recent history of compliant and good behavior while incarcerated," showing he will "be unlikely to engage in criminal conduct upon release, and will benefit from supervised release as he reintegrates into the community in a positive and productive way." *Id.* at 26.

As to the Section 3553(a) factors, he argues that "[t]he overriding factor under § 3553(a) that was not present at the time of sentencing is the COVID-19 pandemic and the serious risk it presents to Mr. Hamlett's health and safety." *Id.* at 27. He argues that his "history and characteristics today are different than when he was arrested for the offense," and the most "up-to-date picture" of him shows "his ability to follow rules and respect authority." *Id.* at 28. He

---

[1] As of the date of this Order, however, there were two active inmate cases and zero active staff cases of COVID-19 at FCI Danbury. *See* Bureau of Prisons, *COVID-19 Coronavirus*, https://www.bop.gov/coronavirus/ (last visited Feb. 5, 2021).

argues that his 15-year sentence is "longer than necessary to demonstrate the seriousness of [his] offenses" for several reasons, including that the equivalent state offense carries a five-year maximum sentence, *id.* at 29; the Guidelines ranges for the sex trafficking of a minor and production of child pornography counts allegedly were "unreasonably high," *id.*; and Mr. Hamlett's conduct allegedly was "not the kind of conduct that was envisioned when these laws were created," *id.* at 29. Finally, Mr. Hamlett argues that the period of incarceration he has served thus far – approximately three years of his fifteen-year sentence – would sufficiently "impress upon him the seriousness of the crime for which he was convicted." *Id.* at 31. He proposes release to live with his sister in Hartford, Connecticut. *Id.* at 34.

The Government opposes Mr. Hamlett's motion. Gov't Opp'n. The Government argues that only one of Mr. Hamlett's conditions, obesity, increases his risk for severe COVID-19 illness. Gov't Opp'n at 11-12. Specifically, the Government argues that Mr. Hamlett's latest blood pressure readings "do not qualify as high blood pressure or hypertension," and that even if he had hypertension, this would be "insufficient to establish an 'extraordinary and compelling reason' for release," *id.* at 14, and that "[t]he [Centers for Disease Control ("CDC")] does not list [nasal polyps or chronic sinusitis] as [conditions] that will place an adult at an 'increased risk' or possible increased risk" of severe illness if he was to contract COVID-19, *id.* 11. With respect to Mr. Hamlett's morbid obesity, the Government "acknowledges that [Mr. Hamlett]'s weight is a condition that places him at an increased risk of severe illness from the virus that causes COVID-19," *id.* at 15, but argues that cases in which courts have granted compassionate release on obesity alone are distinguishable given the nature of Mr. Hamlett's crime and the relatively low percentage of his sentence that Mr. Hamlett has served, *id.* at 16, and that courts are divided in their treatment of morbid obesity in a compassionate release inquiry, *id.* at 17-18.

The Government argues further that Mr. Hamlett's claims that his medical care in custody is inadequate are "not accurate," citing multiple instances on the record in which Mr. Hamlett received medical evaluations or consultations and was offered medication or other relief. *Id.* at 12-13. In the Government's view, "[Mr.] Hamlett's medical records demonstrate that [his] health concerns can be addressed by the BOP and are not of such a nature that they warrant release after serving less than one quarter of a fifteen-year sentence." *Id.* at 19. The Government also notes that "on December 30, 2020, the BOP facilities began receiving COVID-19 vaccines to administer to staff and inmates," and that, "[o]n information and belief, FCI Danbury has begun receiving doses of the vaccine to administer to staff and inmates." *Id.* According to the Government, Mr. Hamlett would, "as an incarcerated inmate, . . . be eligible for the vaccine sooner than if he were granted early release." *Id.*

With respect to the Section 3553(a) factors, the Government argues that "[a] sentence of less than three years is woefully inadequate" for Mr. Hamlett's crime. *Id.* at 20. In the Government's view, Mr. Hamlett "victimized young girls," including "one who was homeless and hungry," and "when she tried to escape the sexual abuse to which he subjected her[,] he threatened her safety," which weighs against releasing a "predator like [him] after serving only 3 years of his 15-year mandatory minimum term of incarceration, especially when vaccination is on the horizon." *Id.* at 21. The Government also argues that the "history and characteristics" of Mr. Hamlett weigh against release, as they argue that he "has no history of verifiable lawful employment," "made his money exclusively as a pimp," and had, by his own admission, "been doing [so] for a very long time," as well as that "the evidence at trial showed that [he] had a lengthy career trafficking minor and adult females." *Id.* at 21-22. The Government also notes that Mr. Hamlett is not "disciplin[e]-free" while in custody, as he received a disciplinary ticket while at

Wyatt on pretrial detention. *Id.* at 23 (citing Presentence Report, ECF No. 357 ¶ 3 (June 10, 2019) ("PSR")). The Government argues further that Mr. Hamlett's release plan "does not provide any structure," because it "requests [he] be released back to the city where he committed his offenses to live with his teenaged younger sister and to 'rely on his probation officer.'" *Id.* at 23 (emphasis omitted) (quoting Def.'s Mem. at 28).

Finally, the Government also notes that Mr. Hamlett's sentence was "well-below the applicable guideline range of life," and the Court already gave him "a significant break" at sentencing. *Id.* at 24. In the Government's view, reducing Mr. Hamlett's sentence would also be "grossly disproportionate to the harm he caused." *Id.* at 25.

The Court will address each of the relevant factors in turn.

### 1. Exhaustion

Normally, under 18 U.S.C. § 3582(c)(1)(A), a court may not modify or reduce a defendant's sentence on that defendant's motion when the defendant has not exhausted his administrative remedies by either (1) appealing a failure of the BOP to bring such a motion on the defendant's behalf or (2) the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility.

The record shows that the exhaustion requirement has been met. *See* Def.'s Mem. at 34-35; Resp. to Inmate Request to Staff Member, ECF No. 399-2 (Jan. 8, 2021) (showing that the FCI Danbury Warden denied Mr. Hamlett's reduction in sentence on May 20, 2020). As more than thirty days have passed since Mr. Hamlett submitted his request to the Warden, the exhaustion requirement has been satisfied and that Mr. Hamlett's motion is properly before the Court.

## 2. Extraordinary and Compelling Reasons

Since the outbreak of the COVID-19 pandemic, numerous courts within this Circuit have held that a defendant's pre-existing health conditions in combination with the increased risks of COVID-19 in prisons constitute "extraordinary and compelling reasons" warranting relief. *See, e.g.*, *United States v. Delgado*, 457 F. Supp. 3d 85, 89-90 (D. Conn. Apr. 30, 2020) (granting compassionate release where the defendant had a BMI of 40.2, finding that his "severe obesity and sleep apnea put him at increased risk should he contract COVID-19"); *United States v. Daugerdas*, -- F. Supp. 3d --, 2020 WL 2097653, at *3 (S.D.N.Y. 2020) (defendant serving a 180-month term of imprisonment and incarcerated at a facility with no reported cases of COVID-19; the district court found that his underlying health conditions—Type II diabetes, obesity, hypertension, and high cholesterol—and the risk of COVID-19 in prisons generally constituted an extraordinary and compelling reason, but did not ultimately grant compassionate release); *United States v. Morales*, No. 3:19-cr-121 (KAD), 2020 WL 2097630, at *3 (D. Conn. May 1, 2020) (slip op.) (recognizing district courts have found that "[a]sthma is a condition that places a person at increased risk for serious complications, or even death, if the person contracts COVID-19[,]" and "creates a[n] extraordinary and compelling reason for sentence reduction"); *United States v. McCarthy*, 453 F. Supp. 3d 520, 527 (D. Conn. 2020) ("[Mr.] McCarthy is 65 years old and suffers from COPD, asthma, and other lung-related ailments . . . . The defendant's age and medical condition, taken in concert with the COVID-19 public health crisis, constitute an extraordinary and compelling reason to reduce [Mr.] McCarthy's sentence.").

Mr. Hamlett argues that he suffers from morbid obesity, hypertension, chronic sinusitis, nasal polyps, and the inability to smell and breathe through his nose. Def.'s Mem. at 5-9. He also argues that his "bloodwork indicates that he may be anemic, though doctors have not diagnosed

him with anemia." *Id.* at 9-10. He argues that these factors, both together and in isolation, "place him at heightened risk for severe illness or death should he contract COVID-19." *Id.* at 16.

The Government argues that nasal polyps and chronic sinusitis are not COVID-19 risk factors and do not constitute "extraordinary and compelling" reasons warranting release, *see* Gov't Opp'n at 11; that his care in BOP custody has been adequate, particularly with respect to his nasal polyps, *id.* at 12-13; and that he has not been diagnosed with hypertension and his most recent blood pressure readings do not qualify him as hypertensive, *id.* at 13-14. With respect to obesity, the Government argues that obesity alone is not itself an extraordinary and compelling reason for release, and that courts are divided as to the question of whether morbid obesity warrants release. *Id.* at 16-18.

As courts in this District have recognized, CDC guidelines make clear that obesity places individuals at heightened risk of severe complications were they to contract COVID-19. *See, e.g.*, *United States v. Newton*, No. 3:18-cr-0022-8 (VLB), 2020 WL 6784267, at *5 (D. Conn. Nov. 18, 2020) (slip op.) ("The Court acknowledges that Mr. Newton's obesity, which is marginal, places him at a heightened risk of severe complications were he to contract the virus."); *United States v. Davila*, No. 16-cr-00185 (MPS), 2020 WL 6499562, at *2 (D. Conn. Nov. 5, 2020) (slip op.) ("As the Government concedes, [the defendant's] obesity places him at increased risk of severe illness from COVID-19 under the CDC guidelines." (internal citation omitted)).

This Court previously also has found that obesity, taken alone, may constitute an extraordinary and compelling reason for release. *See United States v. Bruno*, No. 18-cr-00061 (VAB), ECF No. 137 (D. Conn. Aug. 3, 2020). Other courts across the Second Circuit, and district courts elsewhere throughout the country, have similarly found that obesity alone may satisfy the extraordinary and compelling prong of the compassionate release inquiry. *See, e.g.*, *United States*

*v. Dasilva*, No. 15-cr-95 (AJN), 2020 WL 5764286 at *2 (S.D.N.Y. Sept. 28, 2020) (slip op.) ("Mr. Dasilva's obesity alone suffices to satisfy the first prong of the analysis, even without reaching Mr. Dasilva's other health conditions."); *United States v. Dawson*, No. 18-40085-HLT, 2020 WL 1812270, at *5 (D. Kan. Apr. 9, 2020) (slip op.) ("The court finds that [the defendant] has established that his obesity puts him at an increased risk for severe illness if he were to contract COVID-19, which weighs in favor of finding exceptional reasons.").

The Court also recognizes, however, that courts in this Circuit are divided as to whether obesity may constitute an extraordinary and compelling reason warranting compassionate release where no other comorbidities are alleged, "especially [where] there was no indication that obesity was not being handled adequately at the inmate's institution." *United States v. Colon*, No. 3:97-cr-48 (SRU), 2020 WL 6049215, at *6 (D. Conn. Oct. 12, 2020) (slip op.); *compare Bruno*, No. 18-cr-00061 (D. Conn. Aug. 3, 2020); *Dasilva*, 2020 WL 5764286, at *2 (finding extraordinary and compelling reasons existed where the defendant was obese, but denying compassionate release on the § 3553(a) factors); *with United States v. Vadakin*, No. 3:9-cr-010 (JBA), 2020 WL 4818440, at *4 (D. Conn. Aug. 17, 2020) (slip op.) (denying compassionate release where, "[w]hile Defendant's obesity does increase his risk of severe illness, it is unclear if he has any other compromising conditions that would predispose him to significant risk"); *United States v. Kerrigan*, No. 16-cr-576 (JFK), 2020 WL 2488269, at *3 (S.D.N.Y. May 14, 2020) (slip op.) (defendant failed to articulate an extraordinary and compelling reason where he was "significantly younger than 65 years old, and while obesity . . . may indicate 'high risk' according to the CDC,

none of the other medical issues [asserted] indicate that he suffers from other primary risk factors looked to by courts, such as asthma, diabetes, or immunocompromization").

With respect to hypertension, courts in this District, and other courts in this Circuit, have held that this condition, combined with the COVID-19 pandemic, may constitute extraordinary and compelling reasons for release. *See United States v. Sedge*, No. 16-cr-537 (KAM), 2020 WL 2475071, at *3 (E.D.N.Y. May 13, 2020) (slip op.) ("Given that the defendant is over 50 and has demonstrated existing medical conditions that would place him into a high-risk category including hypertension, hyperlipidemia, and coronary artery disease, defendant has demonstrated that he is at a higher risk for suffering life threatening complications from COVID-19."); *United States v. Pena*, 459 F. Supp. 3d 544, 550 (S.D.N.Y. 2020) (defendant had hypertension and hyperlipidemia, and the district court recognized the heightened risk hypertension poses); *United States v. Scparta*, -- F. Supp. 3d --, No. 18-cr-578 (AJN), 2020 WL 1910481, at *9 (S.D.N.Y. Apr. 20, 2020) (defendant suffered from "hypertension, sleep apnea, high blood pressure, and high cholesterol" and the court recognized that the CDC "has identified hypertension as a comorbidity that increase the likelihood of serious risk from COVID-19"); *United States v. Sawicz*, 453 F. Supp. 3d 601, 605 (E.D.N.Y. 2020) (finding that, where a defendant suffered only from hypertension, "the COVID-19 pandemic, combined with [the defendant's] particular vulnerability to complications from COVID-19 . . . constitutes an 'extraordinary and compelling reason' for his release").

With respect to Mr. Hamlett's nasal polyps and chronic sinusitis, Mr. Hamlett concedes that "the CDC has not listed sinusitis or nasal polyps as conditions that place an individual at increased risk if they contract COVID-19," but argues that "it stands to reason that someone who is limited to one mode of breathing . . . is likely in a more precarious position if he contracts COVID-19." Def.'s Reply at 1. Several courts have concluded that various conditions related to

the respiratory system such as "chronic . . . sinusitis" do not constitute extraordinary or compelling reasons warranting release. *See, e.g.*, *United States v. Walden*, No. 96-cr-0962 (LAK), 2020 WL 7870670, at *2 (S.D.N.Y. Dec. 31, 2020) (denying compassionate release where defendant suffered from "chronic cough, latent tuberculosis, chronic and acute sinusitis," and other ailments because the defendant had not shown that these conditions put him at greater risk of contracting or developing severe symptoms from COVID-19); *United States v. Wren*, No. 2:17-CR-249 JCM (NJK), 2020 WL 5547757, at *3 (D. Nev. Sept. 16, 2020) (denying compassionate release after finding that the defendant's medical conditions, including "unresolved chronic pneumonia, edema, and essential primary hypertension," as well as "scarred lung tissue and difficulty breathing," did not constitute extraordinary and compelling reasons for release); *United States v. Wiggins*, No. ELH-13-512, 2020 WL 4436373, at *5 (D. Md. Aug. 3, 2020) (denying compassionate release for failure to provide an extraordinary and compelling reason where defendant argued he suffered from "asthma, severe sinusitis, and severe allergies that cause him to have breathing problems" (internal quotation marks and alterations omitted)); *United States v. Norville*, No. 10 CR 1046 (VM), 2020 WL 4742909 (S.D.N.Y. May 29, 2020) (denying compassionate release where defendant allegedly had "acute seasonal allergies and severe sinusitis," finding these did not constitute extraordinary and compelling reasons particularly given the defendant's relatively young age and conditions at his facility); *United States v. Rodriguez-Orejuela*, 457 F. Supp. 3d 1275, 1282 (S.D. Fla. 2020) (denying compassionate release where defendant allegedly suffered from, *inter alia*, metastatic prostate cancer, esophageal ailments, chronic coronary artery disease, chronic hypertension, and acute chronic sinusitis).

Some courts, however, have granted compassionate release motions after listing nasal polyposis or sinusitis as one of the defendant's medical conditions. *See United States v. Kataev*,

No. 16 Cr. 763-05 (LGS),  2020 WL 1862685, at *2 (S.D.N.Y. Apr. 14, 2020) (granting compassionate release where defendant suffered from "chronic sinusitis and recurrent nasal polyposis"); *United States v. Sholler*, 445 F. Supp. 3d 265, 270 (N.D. Cal. 2020) (granting compassionate release to defendant who suffered from acute sinusitis, but also suffered from Parkinson's disease, Type II diabetes, and hyperlipidemia, among other conditions); *United States v. Caminos*, 472 F. Supp. 3d 802, 806 (D. Haw. 2020) (granting compassionate release to defendant who suffered from chronic sinusitis, mononeuropathy of upper limbs, primary hypertension, pulpal necrosis and other ailments). And some courts in this Circuit have granted release where a defendant suffered from respiratory conditions, finding these conditions, especially when taken alongside other COVID-19 risk factors, satisfied the extraordinary and compelling prong. *See, e.g.*, *United States v. Rodriguez*, No. 17-CR-157 (VEC), 2020 WL 3051443, at *1 (S.D.N.Y. June 8, 2020) (slip op.) (the defendant had asthma but also "suffer[ed] from psoriatic arthritis, an autoimmune disorder for which he is prescribed an immunosuppressant that weakens his body's ability to fight infections"); *United States v. Schafer*, No. 6:18-cr-6152 (EAW), 2020 WL 2519726, at *4 (W.D.N.Y. May 18, 2020) ("Defendant is not just immunocompromised, presenting an increased risk for serious illness from COVID-19 according to the CDC, but he also suffers from . . . asthma, further compounding the seriousness of his medical conditions in the face of COVID-19."); *United States v. Park*, 456 F. Supp. 3d 557, 560-61 & n.3 (S.D.N.Y. 2020) (defendant had "a documented history of respiratory issues, including asthma, and immune-compromising diseases," including a prior brain aneurysm, "life-threatening asthma attacks," and lung disease); *United States v. Williams*, 456 F. Supp. 3d 414, 418 (D. Conn. 2020) (defendant had "a history of health problems related to chronic asthma, hypertension, attention deficit hyperactivity disorder, and high cholesterol," had "a history of triple bypass surgery and . . . his medical providers [we]re

considering putting in stents," and "also received a diabetes diagnosis" while in custody); *United States v. Gileno*, 455 F. Supp. 3d 1, 4 (D. Conn. 2020) (defendant "suffer[ed] from chronic asthma and other respiratory issues," including "multiple bouts of pneumonia as an adult" and "hyperactive airway disease," and "chronic remitting pain as well as anxiety and depression").

The Court recognizes that there exist significant factual disputes between the parties as to the severity of Mr. Hamlett's various alleged medical conditions, the risk of suffering severe illness they place him at should he contract COVID-19, and the BOP's ability to adequately treat these conditions while Mr. Hamlett is in custody. *See* Def.'s Mem. at 5-10, Gov't Opp'n at 11-18. In any event, because Mr. Hamlett's motion fails for other reasons, specifically, under the § 3553(a) factors, the Court need not definitively resolve whether Mr. Hamlett's medical conditions qualify as extraordinary and compelling reasons for a sentence reduction.

### 3.  Section 3553(a) Factors

After establishing that extraordinary and compelling reasons exist, "Section 1B1.13 of the Guidelines further provides that a court may reduce a term of imprisonment only if the court determines that '[t]he defendant is not a danger to the safety of any other person or to the community[,]' [ ] and only after considering the factors listed in 18 U.S.C. [§] 3553(a)." *McCarthy*, 453 F. Supp. 3d at 526.

Mr. Hamlett argues that "[t]he overriding factor under § 3553(a) that was not present at the time of sentencing is the COVID-19 pandemic and the serious risk it presents to Mr. Hamlett's health and safety." Def.'s Mem. at 27. He argues that he has during his time in custody "demonstrated his ability to follow rules and respect authority," *id.* at 28; that his 15-year sentence is "longer than necessary to demonstrate the seriousness of the offenses," especially when considered alongside the penalties associated with the equivalent state offense, *id.* at 29; and his

offense conduct "was not the kind of conduct that was envisioned when these laws were created" by Congress, *id.* He argues that before his arrest in this case, he had previously only served a four-month term of imprisonment, and that a sentence of time served, nearly three years, is over eight times that prior sentence. *Id.* at 31. He argues that during his time in custody, he has demonstrated through his "excellent disciplinary record" that he is no longer a danger to the community, and proposes release to the home of his sister. *Id.* at 33-34.

The Government argues that the nature and circumstances of Mr. Hamlett's offense weigh against release. Gov't Opp'n at 20. The Government compares Mr. Hamlett's case to *United States v. Boyd*, No. 13 Cr. 890 (LAP), 2020 WL 2732011 (S.D.N.Y. May 26, 2020), in which the court denied compassionate to release to a defendant convicted of sex trafficking, arguing that "like the defendant in *Boyd*, [Mr.] Hamlett victimized young girls . . . [and] threatened [their] safety." Gov't Opp'n at 20-21. The Government also argues that Mr. Hamlett's history and characteristics weigh against release, as he had twice been arrested prior to the arrest for his crime of conviction, which "is not a minimal criminal history to a twenty-five-year-old," Mr. Hamlett's age at the time of arrest. *Id.* at 22. The Government also notes that Mr. Hamlett was sentenced to a term of imprisonment that was "well[]below the applicable guideline range of life," and argues that reducing his sentence any further would not reflect the "seriousness of the offense[] [and] promote respect for the law." *Id.* at 23-24. In the Government's view, any claims that the guidelines were unduly harsh were "already . . . addressed by th[e] Court" at sentencing, and any comparison to equivalent state offenses is not "accurate," as one "cannot pick a component of [Mr.] Hamlett's crime and claim it does not match the state offense." *Id.* at 26.

The Court agrees.

Here, the § 3553(a) factors weigh against Mr. Hamlett's release.

Most significantly, Mr. Hamlett committed a serious offense: "the human trafficking of children for sex." PSR ¶ 144. Mr. Hamlett "act[ed] as a pimp for minors who were performing sexual acts for customers in exchange for money," "promoted the victims on the Internet, managed the appointments for the girls, and . . . collected 60% of the proceeds for his efforts." *Id.* While Mr. Hamlett argues that the testimony of his victim witnesses lacked credibility, the documentary evidence in this case supported their claims.[2] Mr. Hamlett's Facebook account was "full of messages in which the defendant attempted to recruit women into prostitution," and Mr. Hamlett stated in messages that he had "many regulars," and that the business was "ongoing." PSR ¶ 42. As the court observed in *Boyd*, "[t]he nature and circumstances of [the defendant's] offenses of conviction are plainly serious," as, through his sex-trafficking crimes against minors, "[he] preyed on vulnerable members of our society." 2020 WL 2732011 at *3 (denying compassionate release in part because the defendant, who had served seven years of a ten-year sentence, "remain[ed] a danger to the community"). Mr. Hamlett has nearly ten years remaining on his sentence, of which he has served only a small portion; he is not scheduled to be released until November 20, 2030. Def's Mem. at 5 (citing Inmate Locator, BOP, https://www.bop.gov/inmateloc/ (last visited Feb. 5, 2021)).

Mr. Hamlett's sentence must "reflect the seriousness of the offense, . . . and . . . provide just punishment for the offense[.]" 18 U.S.C. § 3553(a)(2)(A). Given the seriousness of Mr.

---

[2] While not dispositive, Mr. Hamlett's attacks at oral argument on his victims as a means to obtain compassionate release from prison did not help his cause. *See* Min. Entry, ECF No. 407 (Jan. 28, 2021). These attacks undermined the notion that this motion should be addressed at all while an appeal was pending, given its inextricable link between matters raised in that appeal, *see United States v. Hamlett*, No. 19-3069 (2d Cir.), and this motion. Ironically, these attacks demonstrated the absence of the one characteristic Mr. Hamlett urges the Court to show him now: compassion. Significantly, however Mr. Hamlett wishes to portray his victims, these women, like him, have led challenging lives. Of course, vigorous advocacy requires stark contrasts, but what some stark contrasts reveal may not always be beneficial. Again, given the gravity of Mr. Hamlett's current criminal conviction and the other matters discussed above and below, Mr. Hamlett's tactical choices were not at all dispositive, just helpful. Indeed, Mr. Hamlett's failure to demonstrate any compassion for his victims had no bearing on the Court's decision.

Hamlett's crime, his criminal history, and the length of time remaining on his already below-guidelines sentence, he is not a suitable candidate for release at this time. *See United States v. Gamble*, 3:18-cr-0022-4 (VLB), 2020 WL 1955338, at *6 (D. Conn. Apr. 23, 2020) (slip op.) (denying motion for release "because Defendant is ill suited for home confinement because of his lengthy criminal history and [because] no conditions [of release] could adequately protect the public"); *United States v. Lopez*, 16-cr-317 (PAE), 2020 WL 3100462, at *3 (S.D.N.Y. June 10, 2020) (slip op.) (denying motion for compassionate release where defendant had 66 months left of his sentence and "release now, or any time soon, [was] therefore incompatible with the sentence [the original Judge] thoughtfully imposed, even considering the new facts that have emerged in connection with the pandemic").

While the Court notes favorably that Mr. Hamlett appears to have had a favorable disciplinary record while incarcerated, these efforts, while commendable, are not yet sufficient to warrant a finding that his continued imprisonment no longer remains necessary to ensure the safety of the community.

Accordingly, having considered and weighed all of these factors as well as others set forth in 18 U.S.C. § 3553(a), the Court concludes that they weigh against immediate release.

## IV.   CONCLUSION

For the reasons explained above, the motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) is **DENIED**.

**SO ORDERED** at Bridgeport, Connecticut, this 5th day of February, 2021.

  /s/ Victor A. Bolden

Victor A. Bolden
United States District Judge